377 So.2d 718 (1979)
INDIANA INSURANCE COMPANY, Appellant,
v.
Kip WINSTON, Milton Weinkle, Scott Weinkle and Todd Weinkle, and State Farm Mutual Automobile Insurance Company, Appellees.
No. 78-77.
District Court of Appeal of Florida, Fourth District.
October 3, 1979.
Rehearings Denied January 4, 1980.
Harry S. Raleigh, Jr., of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for appellant.
Arthur Halsey Rice, of Fromberg, Fromberg & Roth, P.A., Miami, for appellee Kip Winston.
Harry G. Hinckley, Jr., of Hinckley, Shores & Hill, Fort Lauderdale, for appellees Milton Weinkle, Scott Weinkle and Todd Weinkle.
Steven R. Berger, Miami, and Martin J. Sperry, of Carey, Dwyer, Cole, Selwood & Bernard, P.A., Fort Lauderdale, for appellee State Farm Mut. Auto. Ins. Co.
*719 ANSTEAD, Judge.
The issue on appeal is whether the appellee, Kip Winston, sustained a bodily injury arising out of the "ownership, maintenance, operation, use, loading or unloading" of an automobile within the meaning of an exclusion contained in a homeowner's liability insurance policy issued by appellant, Indiana Insurance Company, to appellee, Milton Weinkle.
The undisputed facts indicate that at the time of the injury an automobile owned by Milton Weinkle was undergoing some external and mechanical modifications, including a modification of the hood to accommodate the installation of an air scoop. The morning of the accident, Weinkle's two sons, Scott and Todd, and Kip Winston removed the hood of the vehicle to attach an air scoop. The hinges remained attached to the car and were depressed by the Weinkle boys in the position in which they would have been had the hood remained attached and closed. The scoop was then counted in the hood and body putty was applied around the scoop to secure and mold it to the hood. While waiting for the putty to dry, Winston was leaning on the vehicle when the hood hinge suddenly released, striking him in the eye. When the Weinkles were sued by Winston, Indiana denied coverage on the basis of a policy provision which specifically excluded accidents "arising out of the ownership, maintenance, operation, use, loading, or unloading" of an automobile. The trial court ruled that the accident did not come within the provisions of this exclusion. Indiana contends that the subject accident arose out of the "maintenance" of the automobile. We agree.
This same phrase, or one very similar thereto, has been given varying constructions in Florida cases, depending on the nature of the insurance policy involved and the factual situation giving rise to its application. General Acc. Fire and Life Assur. Co. v. Appleton, 355 So.2d 1261 (Fla.4th DCA 1978); Auto Owners Ins. Co. v. Pridgen, 339 So.2d 1164 (Fla.2d DCA 1976); Feltner v. Hartford Accident & Indemnity Co., 336 So.2d 142 (Fla.2d DCA 1976); Brown v. Dilworth, 331 So.2d 379 (Fla.3d DCA 1976); Watson v. Watson, 326 So.2d 48 (Fla.2d DCA 1976); O'Dwyer v. Manchester Insurance Company, 303 So.2d 347 (Fla.3d DCA 1974); Valdes v. Smalley, 303 So.2d 342 (Fla.3d DCA 1974); St. Paul Fire & Marine Ins. Co. v. Thomas, 273 So.2d 117 (Fla.4th DCA 1973); National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla.3d DCA 1971).
Most of the decisions construing similar provisions turn on the maxim of construction that where the provision is ambiguous a policy of insurance should be construed to provide the broadest coverage to the insured. St. Paul Fire & Marine Ins. Co. v. Thomas, supra. However, we do not believe an ambiguity exists here. In St. Paul Fire & Marine Ins. Co., supra, this court noted that the words "arising out of" were words of much broader significance than "caused by" and that they were understood to mean "originating from," "having its origin in," "growing out of," or "flowing from."
A case which we find to be somewhat similar to the facts at hand is Mullen v. Hartford Accident and Indemnity Co., 287 Mass. 262, 191 N.E. 394 (1934). In Mullen, the defendant left his truck parked on a public way in front of his place of business and negligently permitted a quantity of oil to escape from a crack in its crank case. This oil leaked out and ran onto a portion of a public highway and gradually accumulated. The plaintiff subsequently slipped and fell on the oil while crossing the highway. The issue was whether the plaintiff's bodily injuries arose out of the "ownership, operation, maintenance, control, or use" of the vehicle as provided in defendant's policy of motor vehicle liability insurance. The court, in concluding that the accident did come within the policy provision, based its finding on the fact that the escape of oil was peculiar to automobiles and therefore there was a necessary connection between the vehicle and the unsafe condition of the street. Thus, it was not a fortuitous circumstance that a vehicle played a part in the occurrence.
*720 The negligent act for which the Weinkles are ultimately claimed to be liable is in essence the negligent maintenance of the hood hinge of the automobile. The hood hinge is literally an integral part of the automobile. True, it does not cause the automobile to be propelled down the road, but it serves a necessary function incidental to the use of the hood, which in turn serves numerous functions as well as being the protective cover for the engine compartment of the automobile. Its presence on the automobile, like the oil on the highway in Mullen, supra, was not a fortuitous circumstance.[1] Thus, as a general proposition, it can be said that but for the maintenance of the hood hinge, an integral part of the automobile involved herein, the injury would not have occurred.
Finally, while we acknowledge that the injured party in this case was not himself actively engaged in the maintenance of the car at the time of the injury, we still believe his injury arose from a condition created during the maintenance of the vehicle. The term "maintenance" has been defined as the labor of keeping something in a state of repair or efficiency. See Truck Insurance Exchange v. Aetna Casualty and Surety Company, 13 Wash. App. 775, 538 P.2d 529 (1975) and cases cited therein. Appleman, in his treatise, indicates that the term maintenance would seem to include acts of either commission or omission relative to the external or mechanical condition of a vehicle. 6B Appleman, Insurance Law and Practice, § 4315, p. 339. We find that the control and subsequent placement of the hinge played an inseparable role in the installation of the air scoop, whose installation can be defined as the maintenance of the automobile (i.e., it keeps the vehicle in a state of efficiency). When the hood hinge released, this was due to the act of either failing to leave the hood hinge in a released position or in failing to keep it properly depressed while preparing the hood to be reattached to the car.
Accordingly, the judgment of the trial court is reversed with directions for further proceedings consistent with this opinion.
MOORE, J., and CROSS, SPENCER C., Associate Judge, concur.
NOTES
[1] But see O'Dwyer v. Manchester Insurance Co., supra.