704 So.2d 176 (1997)
Lisa WESTMORELAND, as Personal Representative of the Estate of Rosemarie Deslauriers, deceased; Elizabeth Carrero and Laniel Carrero, individually and as Co-Personal Representatives of the Estates of Lenise Carrero, deceased, and Laniel Carrero, deceased, and as mother and father of Lenise and Laniel Carrero; and, Jean Deslauriers, individually, and as Personal Representative of the Estate of Fleurette Deslauriers, a/k/a Fleurette Lalonde, deceased, Appellants,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, Appellee.
No. 96-1821.
District Court of Appeal of Florida, Fourth District.
December 24, 1997.
*177 Dean A. Mitchell of the Law Office of Dean A. Mitchell, Miami, for appellant Lisa Westmoreland.
Darryn L. Silverstein of Silverstein, Silverstein & Silverstein, P.A., North Miami Beach, for appellants Carreros and Deslauriers.
Pamela R. Kittrell and Michael C. Mattson of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for appellant American Standard, Inc.
Wayne T. Gill of Walton, Lantaff, Schroeder & Carson, West Palm Beach, for appellee.

ON MOTIONS FOR REHEARING, CLARIFICATION AND CERTIFICATION
FARMER, Judge.
We substitute the following corrected opinion for the original and, as corrected, deny rehearing, clarification and certification.
The subject of this appeal is the obligation of a liability insurance carrier to defend its insured against a claim for damages. The trial judge found no duty to provide a defense against premises liability claims in a case involving several other covered claims. Because an exclusionary clause in the homeowner's insurance provision contains an undefined term and is ambiguous under the circumstances alleged in the complaint, we conclude that the premises liability claims were within the covenant to defend. Consequently the insurer has an obligation to defend the estate of the owner against these claims as well.
The facts may be succinctly stated. When the engine of an unoccupied motor vehicle was left running in a closed, unventilated garage, the air conditioning equipment which was also located in the garagedispersed carbon monoxide poison gasses throughout the house. All of the occupants, including the owner, died from the fumes. Several of the victims' estates sued the estate of the owner in wrongful death actions, alleging that the deaths were proximately caused by the failure of the owner to maintain the premises in a safe condition, and to warn of or correct any dangerous conditions as to which she reasonably had knowledge. In a separate count they alleged, alternatively, that the operation of the motor vehicle proximately caused the deaths.
The owner was insured by a liability insurance policy providing homeowner's coverage. After notification of the suits, the insurer brought a declaratory judgment action seeking an adjudication that, because there was no coverage under the homeowner's coverage for the premises liability claims, the insurer owed no duty to defend the owner's estate against these claims. The trial court concluded that the homeowner's insurance excluded claims for injuries arising out of the use of a motor vehicle and that the claimants' premises liability claims involved the use of a motor vehicle. Accordingly, the court found no duty to defend against the claims and granted summary judgment in favor of the insurer.
In the premises liability count of the complaints, the plaintiffs allege that the deaths were proximately caused because the owner:
"a. negligently and carelessly failed to maintain the garage door in the open position while the subject [motor vehicle]'s engine was operating in the garage at the subject premises; and/or

*178 "b. negligently and carelessly maintained the air conditioning equipment and/or system which was designed and manufactured in such a way as to be inadequate to reasonably safely perform the functions required of said air conditioning equipment and/or system in that the subject air conditioning equipment and/or system sucked in gasses including carbon monoxide poison from the garage and dispersed it throughout the living areas of the house; and/or
"c. negligently and carelessly failed to install and/or maintain carbon monoxide warning devices in the subject house; and/or
"d. negligently and carelessly failed to adequately ventilate the garage; and/or
"e. negligently and carelessly failed to warn of the dangerous condition and risk of operating the subject [motor vehicle] in the closed garage at the subject premises while the engine was left running; and/or
"f. negligently and carelessly failed to otherwise prevent carbon monoxide poison from entering the living areas of the house...."
Clearly these allegations state that the deaths were caused by an agency other than the use of a motor vehicle. At a minimum they allege that the listed instances of premises negligence intervened or concurred with a motor vehicle to cause the deaths.
The policy broadly provides homeowner's liability coverage in an insuring clause labeled "Coverage EPersonal Liability." It extends coverage to all claims brought against the insured "for damages because of `bodily injury' ... caused by an `occurrence'...." The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results ... in bodily injury." An exclusion, however, in this section of the policy states as follows:
" Coverage EPersonal Liability ... do[es] not apply to `bodily injury' ... arising out of the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an `insured'." [e.s.]
In finding no duty to defend the owner's estate against the premises liability claims, the trial judge apparently concluded that, because the poison gas was dispersed from a motor vehicle in the garage, the premises liability claims were not covered by the homeowner's policy and therefore the insurer had no duty to defend against the premises liability claims.
The logic of the trial judge begins with an implicit assumption that, because the fumes were emitted by the running engine of a motor vehicle, it was the use of the vehicle that caused the bodily injuries leading to death. If the homeowner's negligence with regard to the maintenance of the premises played any role in the deaths, he apparently reasoned, such negligence must necessarily beat the mosta concurring cause. But, he concluded, this court has expressly rejected the concurring cause theory as regards this kind of exclusion in Dalrymple v. Ihnen Pool Service & Supply, Inc., 498 So.2d 646 (Fla. 4th DCA 1986). He also concluded that our later decision in Frontier Insurance Co. v. Pinecrest Preparatory School, Inc., 658 So.2d 601 (Fla. 4th DCA 1995), rev. den., 664 So.2d 248 (Fla.1995), does not recede from the holding in Dalrymple. Both cases, he said, stand for the proposition that the concurring cause doctrine may not be used to "avoid application of the automobile exclusion." Frontier, he said, "avoided application" of the motor vehicle exclusion because in that case it was ambiguous when applied. He went on to read our decision in Frontier to hold that there could be overlapping coverage between the homeowner's and automobile coverage, but only when the automobile exclusion in the homeowner's coverage is ambiguous. He implicitly found no ambiguity in the automobile exclusion, however, when applied to the claims in suit. In the end, the trial court determined:
"Since the [district] court has held the concurrent cause doctrine is inapplicable, the court further finds the underlying factual allegations in the complaints do not give rise to a duty to defend, regardless of whether any of the acts of alleged negligence having to do with maintenance of the home would apply coverage if the complaints *179 deleted allegations of negligent maintenance and operation of the motor vehicle."
It is this decision that we review today.
We begin our own analysis from a different point. Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties, and ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla.1993). Florida law is equally well-settled that insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage. Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So.2d 565, 568 (Fla. 2d DCA 1984) (insurance coverage must be construed broadly and its exclusions narrowly); Nat'l Merchandise Co. v. United Serv. Auto. Ass'n, 400 So.2d 526, 532 (Fla. 1st DCA 1981) (terms in policy relating to coverage must be construed liberally in favor of insured); Valdes v. Smalley, 303 So.2d 342, 344 (Fla. 3d DCA 1974) (clause extending insurance to insured must be construed liberally in favor of insured); see also Hartnett v. Southern Ins. Co., 181 So.2d 524, 528 (Fla.1965) ("so long as these contracts are drawn in such a manner that it requires the proverbial Philadelphia lawyer to comprehend the terms embodied in it, the courts should and will construe them liberally in favor of the insured and strictly against the insurer to protect the buying public who rely upon the companies and agencies in such transactions."). We note that the insuring clause in this homeowner's policy provision extends coverage to all bodily injury claims caused by an occurrence, which includes continuous exposure to the same harmful condition.
In contrast to insuring clauses, however, exclusionary clauses in liability insurance policies are always strictly construed. Demshar v. AAACon Auto Transport, Inc., 337 So.2d 963, 965 (Fla.1976) ("Exclusionary clauses in liability insurance policies are always strictly construed."); St. Paul Fire & Marine Ins. Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA), cert. denied, 282 So.2d 638 (Fla.1973) (well settled and almost universally accepted principle of construing the exclusion in a manner which affords the broadest coverage); Smith v. General Accident Ins. Co. of America, 641 So.2d 123 (Fla. 4th DCA 1994); and Frontier Ins. Co. v. Pinecrest Preparatory School, Inc., 658 So.2d 601, 602 (Fla. 4th DCA 1995).
We recently addressed the strict construction of exclusionary clauses in State Farm Fire & Cas. Ins. Co. v. Deni Assoc. of Florida., Inc., 678 So.2d 397 (Fla. 4th DCA 1996), rev. granted, 695 So.2d 699 (Fla.1997) [Deni]. There we confronted a clause that purported to deny any coverage for bodily injury claims caused by the "discharge, dispersal, release or escape of pollutants." The policies further defined the term pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." 678 So.2d at 399. In concluding that the exclusions barred coverage of the claims in suit we stated:
"Thus, the current Florida rule is that strict construction is required of exclusionary clauses in insurance contracts only in the sense that the insurer is required to make clear precisely what is excluded from coverage. If the insurer fails in the duty of clarity by drafting an exclusion that is capable of being fairly and reasonably read both for and against coverage, the exclusionary clause will be construed in favor of coverage. If the insurer makes clear that it has excluded a particular coverage, however, the court is obliged to enforce the contract as written."
678 So.2d at 401. We also explained, however, that:
"Strict construction does not mean that a court must always find coverage. Strict construction does not mean ... that clear words may be tortured into uncertainty so that new meanings can be added. Where the insurer has defined a term used in the policy in clear, simple, non-technical language, as is the case with pollution in these policies, strict construction does not mean that judges are empowered to give the defined term a different meaning *180 deemed more socially responsible or desirable to the insured."
Id. Our decision in Deni, therefore, makes it clear that if an exclusionary clause with undefined terms has not been stated with sufficient clarity, then the rule of strict construction requires a construction in favor of the insured. At the same time, however, Deni makes it clear that we may not ignore the plain meaning of the words employed in order to contort clarity into ambiguity.
In contrast to coverage issues, however, the insurer's duty to defend its insured depends largely upon the allegations of the complaint against the insured. Bennett v. Fidelity & Cas. Co. of New York, 132 So.2d 788 (Fla. 1st DCA 1961). It is thus well-established that:
"where a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend the entire suit."
Sunshine Birds & Supplies, Inc. v. United States Fidelity & Guaranty Co., 696 So.2d 907, 910 (Fla. 3d DCA 1997); see also Psychiatric Assoc. v. St. Paul Fire & Marine Ins. Co., 647 So.2d 134 (Fla. 1st DCA 1994); Irvine v. Prudential Prop. & Cas. Ins. Co., 630 So.2d 579 (Fla. 3d DCA 1993); Marr Investments, Inc. v. Greco, 621 So.2d 447 (Fla. 4th DCA 1993); Grissom v. Commercial Union Ins. Co., 610 So.2d 1299 (Fla. 1st DCA 1992), rev. denied, 621 So.2d 1065 (Fla. 1993); Metro Dade County v. Florida Aviation Fueling Co., 578 So.2d 296 (Fla. 3d DCA), rev. denied, 589 So.2d 290 (Fla.1991); West American Ins. Co. v. Silverman, 378 So.2d 28 (Fla. 4th DCA 1979), cert. denied, 389 So.2d 1117 (Fla.1980); American Hardware Mut. Ins. Co. v. Miami Leasing & Rentals, Inc., 362 So.2d 28 (Fla. 3d DCA 1978). Moreover, when the issue of the insurer's duty to defend is decided in favor of the insured in a declaratory action, questions regarding the duty to indemnify should be reserved until the issue of the insured's liability is determined. Int'l Surplus Lines v. Markham, 580 So.2d 251, 254 (Fla. 2d DCA 1991). Hence, we must determine only for the purposes of providing a defense whether, even considering this exclusionary clause, the insurer should provide a defense of the premises liability claims.
It is at once apparent that the link between bodily injury and the use of a motor vehicle in the exclusion lies in the words arising out of. Unlike the pollution exclusion in Deni, however, in this case the policy does not define the term arising out of. Where a critical term is not defined in an exclusionary clause of the policy, it will be liberally construed in favor of an insured. State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1247 n. 3 (Fla.1986) ("[W]here the term `theft' is used in an insurance policy, without definition, it will be interpreted liberally in favor of the insured."); Nat'l Merchandise Co. v. United Service Auto. Ass'n, 400 So.2d 526, 530 (Fla. 1st DCA 1981) ("insurer cannot, by failing to define the terms `auto accident' or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided") We thus turn to the plain meaning of these critical words.
The exclusionary term arising out of stems from the root word arise. In common usage, the plain meaning of arise is multifaceted. For example, the OED definitions include:
"to spring forth ... originate ... or result from ... to come into presence or notice, `come up,' present itself [as in] arising out of, used with loose construction, to introduce a circumstance, action ... arising out of an event." [e.o.]
THE COMPACT OXFORD ENGLISH DICTIONARY 629 (2d ed.1991). The AHD definitions include "to come into being, originate," as well as "to result, issue, or proceed [as in] `mistakes that arise from a basic misunderstanding'." [e.o.] AMERICAN HERITAGE DICTIONARY 99 (3d ed.1992). A widely used legal thesaurus provides three separate entries for arise: the first is parenthetically labelled appear; the second is labelled occur; and the third originate.[1] So it is apparent from general *181 usage, anyway, that the term arise, and thus also the undefined exclusionary term arising out of, may reasonably have differing meanings, with senses ranging from appearance and origination to causation.
In any sense, the idea conveyed begins with the word arising. Functionally, the term conveys the thought that something is traced backwards to a specified point or thing. In the exclusion we construe today, the term is used to link or join the concepts of appearance, origination or causation depending on how the essential word arising is construedbetween a bodily injury and the use of a motor vehicle. Thus without straining to find eccentric or unusual meanings, we conclude that the undefined words arising out of in this exclusionary clause may reasonably and logically be interpreted in substantively different ways.
The single meaning contended by the insurer in its argument, however, is that the words arising out of have a broad meaning that encompasses any connection at all in the chain of events and circumstances between a bodily injury and a use of a motor vehicle. Under this meaning urged by the insurer, it is not necessary that the use of the motor vehicle be the legal or proximate cause, or even a remote cause, of the injury. Rather, according to the insurer, it is enough if the injury can be traced backwards to the running engine of an unoccupied motor vehicle. The insureds, however, contend that the words arising out of must reasonably be interpreted to have a narrower or stricter meaning. In effect they contend that the words arising out of would allow reaching backward for a connection only so far as is direct and immediate in consequence. According to their argument, the exclusionary term would thus mean that the bodily injury must legally or proximately be caused by the use of the motor vehicle for the exclusion to apply. They further contend that, as alleged in their complaints, although the carbon monoxide fumes originated with the engine of an unoccupied motor vehicle left running in a closed garage, a jury could nevertheless reasonably find that the legal or proximate cause of the bodily injuries in this case was the negligent closing of the garage door. Alternatively, they allege, the proximate cause could be found to be the placement of the air conditioning equipment in the garage where the engines of motor vehicles are often run, or the failure to ventilate the garage, or even the failure to employ carbon monoxide detection devices about the house in view of the location of the air conditioning equipment and the uses to which the garage might foreseeably be put.
Of course in searching for causation, it is logically possible to trace the occurrence of an incident backwards to a thousand events in the mosaic of circumstances, actions and conditions that conduce to bring it about. There is a television show, called Connections, in which an event, e.g., the invention of the atomic bomb, is linked by a chain of past events, many quite fortuitous, all the way back to ancient times. Tracing causation is thus a limitless pursuit unless, as Cardozo said, we "put bounds to the chase." Gully v. First Nat'l Bank of Meridian, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936).
Because the kind of claim here said to be covered by the insuring clause and excluded by the exclusionary clause is one founded on negligence, it seems reasonable to us to find an appropriate boundary in the elements of a cause of action for negligence. One of the elements of a negligence claim is that the damages be tied to the alleged breach of the duty of care by legal, or proximate causation. Under the element of proximate causation, the use of a motor vehicle would not necessarily be the cause of the injury if some intervening event is found by the finder of fact to have been its legal or proximate cause. Thus, even though a motor vehicle engine may appear in the chain or mosaic of events in which the bodily injuries occurred, if the jury were to find that the use of the motor vehicle itself was not the legal or *182 proximate cause of the injury, then the exclusion would not apply under this strict construction.
This kind of analysis as to a functionally identical policy exclusion was applied by our court in circumstances having a logical affinity for those now present in St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA), cert. denied, 282 So.2d 638 (Fla.1973) [Thomas]. There, a passenger in an automobile was injured when a bottle was thrown from a passing vehicle. The thrown bottle startled the driver into losing control of the vehicle in which the passenger was riding. The vehicle left the roadway and overturned, causing injury to the passenger. The passenger sued the man who had thrown the bottle from the passing vehicle. Coverage for the claim was sought under the thrower's homeowner's policy. The homeowner's policy had an exclusion providing that:
"the policy did not apply ... `to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining....'" [e.s.]
273 So.2d at 119.
In construing this provision for the court, Judge Owen wrote:
"The meaning of the exclusion is not clear. It says merely that the policy `Does Not Apply ... to the ... use ... of ... automobiles....' There is no language which expressly states what, if any, nexus or connection must exist between the insured's liability and the use of an automobile. However, some connecting link is necessarily implied, or else the exclusion would be meaningless. [c.o.] But how strong or weak must that connection be? For example, does this mean that the policy does not apply to a liability incurred `while using' the automobile? Then clearly the exclusion applied in this case because [the thrower's] liability arose `while using' the automobile, (i.e., by riding in it. [c.o.]) On the other hand, does this language mean that the exclusion applies only if the liability is one `caused by' the use of the automobile? Then just as clearly the exclusion did not apply since there was no causal connection between [the thrower's] use of the car and his liability liability attached because of his negligent conduct in throwing the bottle onto the roadway, not in riding in the car.

"Since there is an ambiguity as to whether the nature of the causal connection (between the liability and the use of the automobile) necessary to bring the activity within the ambit of the exclusion must be strong or direct (i.e., `caused by'), or may be weak and remote (i.e., `while using'), we are constrained to follow the well settled and almost universally accepted principle of construing the exclusion in a manner which affords the broadest coverage.... We conclude that before the policy exclusion would become applicable, the liability would have to be caused by the use of the automobile. Clearly, such did not occur in this case." [e.o., e.s., c.o.]
273 So.2d at 119-120.
Importantly, for our case, Judge Owen likened the language of the Thomas exclusion, does not apply, to the words arising out of. As he explained:
"A number of courts, in considering the causal connection which must exist between the injury and the use of the automobile (in order to make applicable an exclusionary clause of the type involved here) have adopted the test of `arising out of', which is the language used in the insuring agreement of the standard automobile liability insurance policy. There is indeed considerable merit and logic to such a view, if we assume that the underwriting intent is for the automobile policy and the homeowner's policy to be complementary to one another, that is, that the coverage under one takes up where the other leaves off, with neither hiatus nor overlapping of such coverage. On this premise it would be entirely proper to conclude that if the injury must `arise out of' the use of the automobile in order to be within coverage of the automobile policy, then the same test should apply in determining whether the injury or liability is within the exclusionary clause of the homeowner's policy. But, so far as we are aware, no court has *183 permitted the exclusionary clause of the personal liability policy to become applicable where the causal connection between the injury and the use of the automobile was not at least as strong as the `arising out of' standard required under the automobile policy.

"The words `arising out of' have been viewed as words of much broader significance than `caused by', and have been said to mean `originating from', `having its origin in', `growing out of' or `flowing from', or in short, `incident to' or `having connection with' the use of the car.... Even if we were to apply to this case the broader test of `arising out of', we have the view that [the thrower's] liability did not arise out of the use of the automobile. His location in the automobile at the time of the occurrence was fortuitous, merely the situs of his physical being at the time. His liability arose out of negligently throwing the bottle in the roadway. It would not have been altered or affected had he in a similar manner negligently thrown a bottle into the roadway while seated in a car parked on the shoulder of the road, or while standing outside of the car, or while standing on an overpass above the roadway." [e.o., e.s.]
273 So.2d at 120-121. The analytical framework of Thomas seems especially apposite to the case we face today.
First, we note that Thomas saw a distinct difference in the way arising out of should be construed in an insuring clause from the way it should be construed in an exclusionary clause. 273 So.2d at 120 ("[W]e are constrained to follow the well settled and almost universally accepted principle of construing the exclusion in a manner which affords the broadest coverage." [e.s.]). Moreover, although Judge Owen acknowledged that some courts have construed arising out of broadly in the sense of origination or appearance, he nevertheless also concluded that:
"no court has permitted the exclusionary clause of the personal liability policy to become applicable where the causal connection between the injury and the use of the automobile was not at least as strong as the `arising out of' standard required under the automobile policy." [e.s.]
273 So.2d at 120. Hence, even a broad construction of the term in an exclusion would not nullify coverage where the use of the motor vehicle was merely fortuitous and the particular manner of use of the vehicle would not have altered or affected the real act of negligence, i.e., throwing the bottle from the vehicle. 273 So.2d at 120-121.
Most important to the present case, it is the obvious intent of the insurer that leads to the strict or narrow construction of arising out of in this exclusionary clause. As Judge Owen pointed out, there is specific intention in excluding some claims from the homeowner's coverage where a motor vehicle is used. As he explained, the purpose served by the insurer in inserting such an exclusion in the homeowner's provision is for:
"the automobile policy and the homeowner's policy to be complementary to one another, that is, that the coverage under one takes up where the other leaves off, with neither hiatus nor overlapping of such coverage."
273 So.2d at 120. That same underwriting intent would be even more apparent when both homeowners and motor vehicle coverages appear in the same policy.
In the insuring clauses of most policies in this state, the motor vehicle coverage applies only to occurrences arising out of the use or operation of a motor vehicle, while the homeowner's coverage excludes occurrences arising out of the use or operation of a motor vehicle. Unless the automobile and homeowners coverages are consistently construed, there could be a void or gap in the coverage between the two provisions. Thus if we were to accept the construction argued here by the insurer, the coverage would not be complementary: some homeowner's liability claims would be left undefended even though legally caused by an act of negligence not arising out of the use of an automobile. This is easily illustrated in the present case by posing the result of excluding coverage for the premises liability claims, followed by a jury verdict finding no proximate causation under the motor vehicle liability claims but finding causation under the premises liability claims. *184 The insurer has not satisfactorily explained how that entirely possible outcome would accomplish the underwriting intention of complementary coverages.
We again stress that we here construe an undefined term arising out of in an exclusionary clause. The cases primarily relied on by the insurer as allowing a broad construction of that term are insuring clauses. For example in Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984), a woman driver was assaulted by a stranger seeking a ride from her as she began to drive away from her house. Her estate sued her automobile liability insurer for personal injury protection benefits. The term arising out of was used in the insuring clause of the standard PIP provision in her policy. PIP insurance is required by a statute that uses the same formulation "loss sustained ... as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle." [e.s.] 453 So.2d at 1118. As the Novak court explained:
"Construction of the clause `arising out of the use of a motor vehicle' is an easier matter. It is well settled that `arising out of' does not mean `proximately caused by,' but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury. E.g., Government Employees Insurance Co. v. Batchelder, 421 So.2d 59 (Fla. 1st DCA 1982); Indiana Insurance Co. v. Winston, 377 So.2d 718 (Fla. 4th DCA 1979), cert. denied, 388 So.2d 1120 (Fla.1980); Auto-Owners Insurance Co. v. Pridgen, 339 So.2d 1164 (Fla. 2d DCA 1976); National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971). It is clear that in the present case, as the district court correctly concluded, there was a highly substantial connection between Ms. Novak's use of the motor vehicle and the event causing her fatal injury. Obtaining a ride in or possession of the motor vehicle was what motivated the deranged Endicott to approach and attack the deceased."
453 So.2d at 1119. Batchelder, Pridgen, and Corbo, relied on by the Novak court for the broad construction, are also insuring clause cases in which the court found coverage of the claim in suit. Batchelder (eye injury from exploding beer bottle while passenger in automobile); Pridgen (hand crushed while attempting to disengage wire between jeep and boat trailer when trailer tilted); Corbo (passenger bitten by dog being transported inside vehicle).
Winston, on the other hand, involved a claim under a homeowner's policy with an exclusion like the one we confront today. In construing the arising out of terminology, we said:

"This same phrase, or one very similar thereto, has been given varying constructions in Florida cases, depending on the nature of the insurance policy involved and the factual situation giving rise to its application. General Acc. Fire and Life Assur. Co. v. Appleton, 355 So.2d 1261 (Fla. 4th DCA 1978); Auto-Owners Ins. Co. v. Pridgen, 339 So.2d 1164 (Fla. 2d DCA 1976); Feltner v. Hartford Accident & Indemnity Co., 336 So.2d 142 (Fla. 2d DCA 1976); Brown v. Dilworth, 331 So.2d 379 (Fla. 3d DCA 1976); Watson v. Watson, 326 So.2d 48 (Fla. 2d DCA 1976); O'Dwyer v. Manchester Insurance Company, 303 So.2d 347 (Fla. 3d DCA 1974); Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974); St. Paul Fire & Marine Ins. Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973); National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971)." [e.s.]
377 So.2d at 719. We explicitly recognized that this locution was subject to different constructions. Under the facts and circumstances of that case, however, we decided that the claim was excluded because the injury resulted when the hood hinge of an auto on which the victim was working released and struck the victim in the eye. We reasoned that:
"[t]he hood hinge is literally an integral part of the automobile. True, it does not cause the automobile to be propelled down the road, but it serves a necessary function incidental to the use of the hood, which in turn serves numerous functions as well as being the protective cover for the engine compartment of the automobile." *185 377 So.2d at 720. In short, even according a strict construction to the exclusion, it appeared that the injury clearly resulted from use or maintenance of the vehicle.
Many of the cases relied on by the Winston court are also insuring clause, and not exclusionary clause, cases. Appleton, Feltner, and Valdes gave a liberal construction to the term when used in insuring clauses. Indeed, the facts in Valdes bear a strong resemblance to the facts in Thomas, involving an incipient altercation in which a beer mug was thrown from a speeding auto at several youths to clear them out of the way. The third district found coverage of the claim, stating:
"Appellees urge that the cited case of St. Paul Fire & Marine Ins. Co. v. Thomas, supra, cannot be distinguished from the instant case, and therefore affirmance is mandated. In [Thomas] the Fourth District Court of Appeal considered a complaint in which it was alleged that the plaintiff was injured when her car went out of control when the defendant threw a pop bottle out of the window of his car into the path of the car in which the plaintiff was riding.
"The plaintiff sought coverage under the defendant's homeowner's policy, which contained a standard exclusionary clause with respect to the `use' of an automobile away from the premises.
"The court, narrowly construing an exclusionary provision of an insurance policy to afford the broadest coverage, held that the accident did not arise out of the use of the vehicle, and therefore the insured was entitled to coverage under the homeowner's policy.
"In our opinion, there are distinguishing factors present in the cause sub judice. In the first place, the clause at issue here is not an exclusion, but a clause which reflects as its dominant purpose an intention to extend coverage to the insured or injured party. Therefore, the clause must be liberally construed in favor of the insured. See, State Farm Mut. Automobile Ins. Co. v. Partridge, [1973, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123] supra; Wyoming Farm Bur. M. Ins. Co. v. State Farm M. Auto Ins. Co.,[ 10th Cir.1972, 467 F.2d 990 ] supra; Daleo v. Bert & Bette Bayfront 66 Marine, Fla.App.1973, 273 So.2d 113."
303 So.2d at 344. Again, the same language was construed broadly in an insuring clause to provide coverage, but narrowly when ambiguous in an exclusionary clause so as not to defeat coverage.
It is important to recognize that a broad construction of this terminology in an insuring clause does not itself inevitably result in coverage. Instead, even with a broad meaning the courts have required a nexus or causal relationship between the use or operation or ownership of the vehicle and the injuries giving rise to the suit. See, e.g., General Acc. Fire & Life Assurance Corp. v. Appleton, 355 So.2d 1261 (Fla. 4th DCA), cert. denied, 361 So.2d 830 (Fla.1978) (assault and battery against passenger not covered by uninsured motorist provision of victim's policy); O'Dwyer v. Manchester Ins. Co., 303 So.2d 347 (Fla. 3d DCA 1974) (no coverage when victim walked into bracket on vehicle while visiting property; although "arising out of" is not synonymous with "caused by" and is broadly construed, term requires some causal connection with use of motor vehicle); Brown v. Dilworth, 331 So.2d 379 (Fla. 3d DCA 1976) (no coverage under auto liability policy for injury from caustic substance in bottle taken from vehicle used to store refuse during week on rental property); Feltner v. Hartford Acc. & Indemnity Co., 336 So.2d 142 (Fla. 2d DCA 1976) (no coverage under auto liability policy for assault and battery against driver returning passenger to attacker's house); Watson v. Watson, 326 So.2d 48 (Fla. 2d DCA 1976) (no coverage under auto liability policy for injury caused when loaded gun accidentally discharged while being removed from auto); Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981) (no PIP coverage for assault by intruder lurking in the back seat of the insured vehicle, which was merely the fortuitous scene of the assault). The clear import of all of these cases is that, even though the term arising out of in an insuring clause must be liberally construed in favor of coverage, the term nevertheless requires some causal relationship between *186 the injury and use or operation of a motor vehicle, short of proximate cause. Accordingly, the link between an injury and an automobile is not alone, without more, determinative of the construction of the policy provision.
We also conclude that the insurer's broad construction of this exclusionary clause would lead to an inexplicable anomaly. That is, a broad construction of an insuring clause yields a restriction of arising out of to require at least some causal relationship between the injury sustained and the use of the automobile; but paradoxically a strict construction of the same term in an exclusionary clause results in an unrestrained meaning. In short, a causal relationship must be shown to insure the claim but no causal connection of any kind is necessary to exclude the claim. Consequently, unless we apply the well-established principle of construing arising out of differently in insuring clauses than we do in exclusionary clauses, the insured may be left with no coverage for premises negligence that a jury finds was the cause of an injury.
Another more recent decision of this court reaching the same result, but with a different analytical approach, is Smith v. General Acc. Ins. Co. of America, 641 So.2d 123 (Fla. 4th DCA 1994). The claimant there was involved in a rear-end collision with a taxi owned by the defendant. She sued the owner for negligence in employing the driver who had caused the accident. The only available insurance was provided by a general business liability policy that contained a motor vehicle exclusion identical to the one we face now. In finding a duty to defend the owner against the negligent hiring claim, we stated:
"An insurance company's duty to defend is separate and more extensive than its duty to pay. Klaesen Brothers, Inc. v. Harbor Ins. Co., 410 So.2d 611, 612-13 (Fla. 4th DCA 1982). The duty to defend is determined solely by the allegations in the complaint against the insured, not by the insured's defenses. [c.o.] If the allegations in the complaint state facts bringing the injury within the policy's coverage, the insurer must defend regardless of the merit of the lawsuit. [c.o.] Any doubt about the duty to defend must be resolved in favor of the insured. Marr Investments, Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993)."
641 So.2d at 124. While Smith is quite consistent with Thomas, a decision in this case to exclude coverage on the basis of the present exclusion would be difficult to harmonize with earlier cases of this court.
It is also now apparent that it would be quite impossible to state a categorical rule on concurring cause as applied to the usage of arising out of in an insurance policy. That policy term might allow for concurring or intervening causation according to its usage, the exact policy language, and the facts of the claim involved. The context of the necessity to construe the term is also important. In this case, as we have made clear, the question was raised in the connection with providing a defense and before any resolution of the underlying personal injury claim. When the issue relates to the covenant to defend, and the question of indemnity is not yet ripe, stating a categorical rule on concurring cause becomes even more difficult. Consequently, we disagree with the trial judge's determination that the duty to defend the premises liability claim was disposed of by any supposed concurring cause rule applicable to the kind of exclusion we face today.
Nor do our decisions actually purport to state a categorical rule on concurring cause as held by the trial court. Certainly our opinion in Dalrymple v. Ihnen Pool Service & Supply, Inc., 498 So.2d 646 (Fla. 4th DCA 1986), does not even mention such a rule. Our opinion merely explained:
"In Cesarini v. American Druggist Ins. Co., 463 So.2d 451 (Fla. 2d DCA 1985), the court upheld summary judgment in favor of an insurance company on a cause of action for negligent hiring and supervision of an employee who, while driving a vehicle owned by the insured, was involved in an accident resulting in injury to the plaintiff. The decision was based on an exclusion in substance identical to that contained in the multi-peril policy here. Plaintiff does not seriously argue that Cesarini was incorrectly decided. Rather, plaintiff seeks to distinguish Cesarini, arguing that in Cesarini negligent entrustment was the sole *187 proximate cause of plaintiff's injuries, whereas, in this case there existed concurring causes for the injuriesretaining the employee at all and allowing him to driveand that only the latter cause is excluded under the policy.
"This Court does not believe that Cesarini is distinguishable from the present case. In Cesarini, the plaintiff made precisely the type of argument made by plaintiff here'[a]ppellant argues that the exclusion is ambiguous because it does not address this type of circumstance in which joint acts of negligence (those of the [insured] and the driver) combined to cause injury.' 463 So.2d at 452. The court in Cesarini rejected that argument, concluding that the injuries clearly arose from use of the vehicle and that, therefore, the exclusion applied.
"This Court believes that Cesarini was correctly decided and that it is consistent with other decisions expressing the law in this State. See, e.g., Volkswagen Ins. Co. v. Dung Ba Nguyen, 405 So.2d 190 (Fla. 3d DCA 1981), pet. for rev. den., 418 So.2d 1280 (Fla.1982); Atkins v. Bellefonte Ins. Co., 342 So.2d 837 (Fla. 3d DCA 1977). Because plaintiff's injuries clearly arose out of the `operation' or `use' of an `automobile... operated by [a] person in the course of his employment by [the] insured,' the exclusion applies."
498 So.2d at 647. None of the authorities relied on in our opinion purports to adopt a per se rule on concurring cause in this circumstance.
As to a concurring cause rule, Dalrymple is also extremely difficult to square with Smith. Judge Gunther's opinion for the court does not mention or attempt to distinguish Dalrymple, yet Smith reaches a directly contrary result. When we are confronted with the suggestion of conflicting opinions of this court, ordinarily a panel will not confront a conflict between cases where the applicable principle was not expressly raised or disposed of, and the prior decisions can be understood without reference to the alleged conflicting principle.[2]
Applying all of these principles to the case at hand, we read the allegations of the complaints in the premises liability causes of action to assert that the deaths were legally or proximately caused not by the running engine of the motor vehicle but instead by reason of the negligent placement of the air conditioning equipment in the garage, or by the failure to open the garage door or to ventilate the garage, or by the failure to locate carbon monoxide detection devices throughout the house. We conclude that a jury could theoretically find that any one of these alleged acts of negligence was the legal cause of the deaths. Hence, the insurer must provide a defense against both the motor vehicle and premises liability claims.
In reversing, we express no opinion as to whether the insurer has a duty to indemnify the estate of the owner under the insuring clauses for the claims in suit, leaving that for a decision after the finder of fact has resolved the various claims.
REVERSED.
STEVENSON J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, Judge, concurring specially.
I concur in the result only. As I see it, the issue is not as convoluted as the majority makes it out to be. Decisions in this area are driven more by policy considerations than by contract interpretation or legal analysis. Exclusionary clauses in liability insurance policies are strictly construed so that the insured is afforded broad coverage. Application of this principle, in my mind, leads to the conclusion that the accident alleged in the complaint is not excluded from coverage.
I write also to note that construing the exclusion in light of the expectations of a reasonable insured would greatly simplify the legal analysis and more accurately reflect the values that should be applied in this type of case. Although many of the cited cases do engage in the analysis employed by the majority, the law would be better served by framing the issue as one of policy.
*188 To arrive at its result, the majority piles layer upon layer of legal fiction, resulting in an opinion that is difficult to read and apply.
For example, the majority begins with the fiction that insurance policies are the same as any other type of contract, subject to the same rules of construction. I acknowledge the existence of supporting precedent for such a statement, but, like the child who said the emperor had no clothes, I note some of the differences between a homeowner's liability insurance policy and a negotiated contract. The homeowner and the company do not bargain over terminology in a policy; policies are offered on a take it or leave it basis. The area is regulated and policies must comply with controlling statutes. While contract interpretation focuses on discerning the parties objective "intent," their meeting of the minds, that approach does not seem appropriate to the purchase of liability policies in today's marketplace.
The second stratum of fiction in the majority opinion is the statement that the phrase "arising out of" is vague because it is not defined in the policy. The term is not vague because it is undefined, any more than the presence of a definition in a policy sucks all meaning out of a common word used in its normal context. Of the possible definitions of the phrase "arise from," coverage for this accident would be excluded under the most common usages. Applying a "plain meaning" approach to the policy, this incident arises out of the use of a motor vehicle within the meaning of the policy, just as the fumes arose from the car to cause their tragic result. Only by elevating policy considerations over a common sense approach to interpretation can a court conclude that the exclusion does not apply to the accident as pled.
A third layer of confusion arises from the apparent adoption of causation analysis from tort law to construe the insurance contract. Generally, tort principles should not control the construction of insurance contracts. See Prudential Property & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993). Injecting proximate cause into the interpretation of the policy as an aide to discover the parties' "intent" is not productive. Discussing the concept of proximate cause in tort law, one commentator has observed that there is "[p]erhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion." W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 41, at 263 (5th ed.1984).
What is actually happening in many of the cases cited by the majority is that, without tacitly acknowledging it, Florida courts have construed policies objectively, from the standpoint of the expectations of a reasonable insured. These cases then reason backwards to support a desired result. Openly using a "reasonable expectations" approach to interpretation would produce a cleaner analysis in accord with the actual dynamics of the insured/insurer relationship. Instead, courts discuss coverage questions with terminology that obscures the real issues, complicates cases and leads to curious results, such as State Farm Fire & Cas. Ins. Co. v. Deni Associates of Florida, Inc., 678 So.2d 397 (Fla. 4th DCA 1996), where this court held that a spill of ammonia from a blueprint machine in an architectural firm's offices fell within a pollution exclusion in a comprehensive general liability policy.
NOTES
[1] The entry also labelled appear lists as "associated concepts" the following:

"arise under an obligation, arise under the laws of the United States, arising out of a contract, arising out of and in the course of employment, arising under federal law, arising under the Constitution, arising under contract, cause of action arising, counterclaim arising out of plaintiff's claim."
William C. Burton, LEGAL THESAURUS 32 (2d ed.1980).
[2] For that same reason, we find no conflict with, or any need to harmonize, Thomas and Winston.