788 So.2d 1096 (2001)
AMERICAN SURETY & CASUALTY COMPANY, a Florida insurance company, now known as Sun States Insurance Group, Appellant,
v.
LAKE JACKSON PIZZA, INC. d/b/a Hungry Howie's, et al., Appellees.
No. 1D00-2053.
District Court of Appeal of Florida, First District.
June 21, 2001.
R. Steven Rawls and Lisa A. Oonk of Butler Burnette Pappas, Tampa, and Michael Shelley, Tallahassee, for Appellant.
Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola; Fred A. Cunningham of Slawson, Cunningham, Whalen & Stewart, P.L., Palm Beach Gardens; *1097 Donald M. Hinkle of Fonvielle, Hinkle & Lewis, Tallahassee; and Edgar C. Booth of Booth & Horton, Tallahassee, for Appellees.
PER CURIAM.
Appellant, American Surety & Casualty Company [American], seeks review of an order determining it had both a duty to defend and a duty to indemnify its insured, Lake Jackson Pizza, Inc. [LJP]. We reverse.
From June 1, 1997 through June 1, 1998, LJP was insured by a policy issued by American which provided general liability coverage. The policy contained the following insuring language:
A. COVERAGES
1. Business liability
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"... to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.
The policy also contained the following relevant exclusion:
B. EXCLUSIONS
1. Applicable to Business Liability Coverage
This insurance does not apply to:
. . .
g. Aircraft, Auto or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any ... "auto" ... owned or operated by or rented or loaned to any insured.
The term "arising out of" was not defined by the policy.
On August 9, 1997, LJP's employee, Richard Anderson, was involved in an automobile accident while returning from a pizza delivery. An infant in another vehicle involved in the accident was severely injured. An action was filed against Anderson and LJP seeking damages. The complaint alleged LJP's vicarious liability based on Anderson's status as LJP's employee and negligence premised on LJP's negligent hiring, supervision and training of Anderson. Relying on the automobile liability exclusion, American did not defend LJP against the underlying action. LJP ultimately entered into a consent judgment in the underlying action.
On September 2, 1999, American filed an action seeking a declaration of its rights and obligations under its policy with respect to the underlying action. American asserted there was no coverage for LJP's alleged vicarious liability or negligence because the bodily injury complained of arose from an automobile accident.[1] The parties filed motions for summary judgment. After a hearing on the motions, the trial judge entered an order finding American owed LJP both a duty to defend and a duty to indemnify against the allegations of negligent hiring, training and supervision of Anderson.
In finding American had a duty to defend and indemnify LJP, the trial judge relied on Smith v. General Accident Insurance Company of America, 641 So.2d 123 (Fla. 4th DCA 1994), and Westmoreland v. Lumbermens Mutual Casualty Company, 704 So.2d 176 (Fla. 4th DCA 1997), review *1098 dismissed, 717 So.2d 534 (Fla.1998). The trial judge also found that American had a duty to indemnify because of the application of the "concurrent cause" doctrine. The trial judge found that the efficient cause of the loss was the active negligence of LJP, and that but for the active negligence of LJP the car crash, which was the other concurring cause of the subject loss, would not have occurred.
In Smith v. General Accident Insurance Company of America, Smith was involved in a rear-end collision with a taxi and sued the taxi's owner, Captain's Cab, and the taxi driver. Smith alleged negligence in operation of the taxi, but also alleged negligent hiring because Captain's Cab knew or should have known that the driver was unfit and unqualified to operate a taxi. Captain's Cab had a general liability policy, but did not have an auto policy that covered the taxi involved. The general liability policy excluded "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) an automobile or aircraft owned or operated by or rented or loaned to any insured, or (2) any other automobile or aircraft operated by any person in the course of his employment by any insured." The insurer refused to defend. The panel on appeal determined the insurer had a duty to defend the negligent hiring claim.
In Westmoreland v. Lumbermens Mutual Casualty Company, 704 So.2d 176 (Fla. 4th DCA 1997), the engine of an unoccupied motor vehicle was left running in a closed, unventilated garage, and the air conditioning equipmentwhich was also located in the garagedispersed carbon monoxide poison gasses throughout the house. All of the occupants, including the owner, died from the fumes. Several of the victims' estates sued the estate of the owner. The owner was insured by a liability insurance policy providing homeowner's coverage, which excluded bodily injury arising out of the ownership, maintenance, use, loading or unloading of motor vehicles. The complaints alleged the deaths were proximately caused by the failure of the owner to maintain the premises in a safe condition, and to warn of or correct any dangerous conditions as to which she reasonably had knowledge.[2] The insurer brought a declaratory judgment action seeking an adjudication that because there was no coverage under the policy for the claims, the insurer owed no duty to defend the owner's estate against these claims.
The majority of the panel on appeal in Westmoreland determined the insurer did owe a duty to defend against these claims, reading the allegations "of the complaints in the premises liability causes of action to assert that the deaths were legally or proximately caused not by the running of the engine of the motor vehicle but instead by reason of the negligent placement of the air conditioning equipment in the garage, or by the failure to open the garage door or to ventilate the garage, or by the *1099 failure to locate carbon monoxide detection devices throughout the house." The majority concluded "that a jury could theoretically find that any one of these alleged acts of negligence was the legal cause of the deaths." 704 So.2d at 187.
A contrary result was reached in Hagen v. Aetna Casualty, 675 So.2d 963 (Fla. 5th DCA), review denied, 683 So.2d 483 (Fla. 1996). Hagen owned a small retail carpet store which neither owned nor had access to a forklift. Richardson, an employee of Carpet Transport, delivered carpet to the business. It was common practice to pull the carpet out of the delivery truck with a vehicle owned by Hagen. One day, a roll of carpet fell on Richardson. An action was filed alleging the business failed to have proper equipment for the unloading of carpet. Aetna's policy excluded bodily injury arising out of the operation or use of any automobile operated by the insured. The trial judge determined Aetna had no duty to defend or indemnify. The panel determined that the term "arising out of" was not ambiguous. Instead, it clearly excluded injuries arising out of the use of a vehicle. The panel considered whether the decision to drive a van with a rope attached to the bumper and tied to a roll of carpet was a separate and distinct act of negligence. The panel rejected this theory:
Under Florida law, "concurring causes" are two separate and distinct causes that operate contemporaneously to produce a single injury. First, the decision to do an act is not a "separate and distinct cause" of any injury resulting from the doing of the act. The decision merely brings about the performance of the act. Second, the decision to do the act, at least in this case, was not "contemporaneous" with the performance of the act which caused the injury. After the decision was made, a rope had to be acquired and tied to the vehicle and the carpet. Even then, no injury could result until the vehicle was pulled forward with Richardson in the zone of danger.... But whether we consider the "decision," "the failure to have a forklift," the "plan" or the "negligent unloading," each necessarily involves the use of the vehicle in the act which caused the injury, and all injuries arising out of such use are expressly excluded by the policy terms."
A result contrary to that of Smith and Westmoreland was also reached in Cesarini v. American Druggist Insurance Company, 463 So.2d 451 (Fla. 2d DCA 1985), in which the plaintiff was struck by a school bus driven by a school board mechanic en route to the maintenance garage. The insurance policy at issue excluded from coverage bodily injury arising out of the maintenance, operation or use of the bus. Cesarini argued that there was a showing that the school board negligently hired and supervised the driver, who was unfit to drive, and that the school board's negligence was an independent, originating act in a chain of events culminating in the driver's negligence in striking the plaintiff. Cesarini also argued the exclusion was ambiguous because it did not address circumstances in which joint acts of negligence (those of the school board and the driver) combined to cause injury. On appeal, it was noted that the "terms of the exclusion, in our view and that of the trial court, clearly applied to injury arising from the use or maintenance of the vehicle. The use to which the vehicle was being put at the time of the injury governs the applicability of the exclusion."
We conclude that the term "arising out of" is not ambiguous and, consistent with the decisions in Hagen and Cesarini, that there was no duty under the policy on the part of American to defend because the injuries arose out of the ownership, maintenance, or use of an auto owned or *1100 operated by an insured, as contemplated by the policy. As noted by Judge Gross in a specially concurring opinion in Westmoreland: "The term is not vague because it is undefined, any more than the presence of a definition in a policy sucks all meaning out of a common word used in its normal context. Of the possible definitions of the phrase `arise from,' coverage for this accident would be excluded under the most common usages." 704 So.2d at 188.[3] Our conclusion does not preclude a cause of action against L.P. for negligent hiring, training or supervision. Nevertheless, under the policy at issue there was no duty to defend such a claim.
We also determine that there is no duty to defend or indemnify under the concurrent cause doctrine. In Transamerica Insurance Company v. Snell, 627 So.2d 1275 (Fla. 1st DCA 1993), review denied, 639 So.2d 981 (Fla.1994), an argument was made that insurance coverage might be afforded pursuant to the concurrent cause doctrine, which permits coverage when a loss results from multiple causes, as long as one of the causes is an insured risk. As noted in that decision, however, "this doctrine is applicable only when the multiple causes are not related and dependent, and involve a separate and distinct risk." In this case, the alleged multiple causes are related and dependent. The risk that was created by the alleged corporate policies and practices of LJP was the risk of injury arising out of the use of an automobile. Accordingly, there was no separate and distinct risk.
Because we conclude that there was no duty on the part of American to defend against the allegations of the underlying complaint, the order on appeal is REVERSED.
BARFIELD, C.J., WOLF and POLSTON, JJ., CONCUR.
NOTES
[1] Anderson, as an employee of LJP, was an insured under the general liability policy issued by American.
[2] Specifically, the complaints alleged the deaths were proximately caused because the owner negligently and carelessly: (i) failed to maintain the garage door in the open position while the motor vehicle's engine was operating in the garage; (ii) maintained the air conditioning equipment and/or system which was designed and manufactured in such a way as to be inadequate to reasonably safely perform the functions required of it in that it sucked in gasses including carbon monoxide poison from the garage and dispersed it throughout the living areas of the house; (iii) failed to install and/or maintain carbon monoxide warning devices in the house; (iv) failed to adequately ventilate the garage; (v) failed to warn of the dangerous condition and risk of operating the motor vehicle in the closed garage at the premises while the engine was left running; and/or (vi) failed to otherwise prevent carbon monoxide poison from entering the living areas of the house.
[3] We also find the situation in Westmoreland to be factually distinguishable from the present case. The underlying complaint in the present case alleged: the delivery driver was not an appropriate person to employ as a pizza delivery driver because of his youth, inexperience, medical history; LJP failed to implement policies and practices to properly screen employees and negligently hired and retained the driver; LJP negligently failed to train or adequately supervise its delivery employees; LJP negligently failed to safety inspect and/or select the vehicles used within its delivery operations; and LJP created incentives and a culture that encouraged speeding and reckless operation of vehicles by their delivery drivers. Although no evidence was presented below regarding the count of the underlying complaint which was at issue, one of the attorneys summarized the alleged practices of LJP which were the basis of the allegations of negligent hiring and training. These practices involved providing incentives for rapid delivery, and encouraging reckless/dangerous driving practices. All of the allegations in the complaint revolve around use of a motor vehicle and/or selection and training of persons whose only apparent job function was operation of a motor vehicle to deliver pizzas.