680 So.2d 509 (1996)
CONTAINER CORPORATION OF AMERICA, Appellant/Cross-Appellee,
v.
McKENZIE TANK LINES, INC., Appellee/Cross-Appellant.
No. 95-594.
District Court of Appeal of Florida, First District.
April 23, 1996.
*510 Steven A. Werber and Tracy S. Carlin of Foley & Lardner, Jacksonville, for Appellant/Cross-Appellee.
John S. Miller, Tallahassee, for Appellee/Cross-Appellant.

ON MOTION FOR REHEARING
LAWRENCE, Judge.
We withdraw our January 16, 1996 opinion and substitute the following opinion. The parties' motions for clarification and rehearing in all other respects are denied.
We have for review the trial court's order disposing of the parties' motions for summary judgment. We reverse in part and affirm in part.
Willie Edwards (Edwards), an employee of McKenzie Tank Lines, Incorporated (McKenzie), burned himself on the Fernandina Beach premises of Container Corporation (Container), on March 7, 1992. Edwards was delivering caustic materials[1] pursuant to a McKenzie-Container agreement (agreement) of January 10, 1991. The agreement contained a provision requiring McKenzie to secure $1,000,000 of vehicle and liability insurance, with Container as an added insured. Edwards sued Container, alleging negligence and strict liability for an abnormally dangerous business.
Container, when it learned that the insurance secured pursuant to the agreement contained a $250,000 deductible, sued McKenzie for breach of contract and negligent misrepresentation. Both Container and McKenzie moved for summary judgment. The trial judge granted McKenzie's motion for summary judgment and denied Container's motion. The judge also determined that workers' compensation immunity does not bar Container's suit against McKenzie. Container appeals; McKenzie cross-appeals, raising the immunity issue. We reverse on the appeal, and affirm on the cross-appeal.
This court, in reviewing a summary final judgment, must determine whether there is any genuine issue of material fact, and whether the law is correctly applied to the facts. Hancock v. Department of Corrections, 585 So.2d 1068 (Fla. 1st DCA 1991), review denied, 598 So.2d 75 (Fla.1992). The parties stipulated to the facts in the instant case. The essential question for review thus is whether the trial judge properly applied the law to the facts when he determined that Edwards' accident did not arise out of the "use" of the vehicle insured by Continental. The judge reasoned that if Edwards was not injured during use, then whether or not McKenzie negligently misrepresented the Continental policy coverage to Container, or breached its contract with Container by failing to secure required insurance, is moot.

*511 ISSUES ON APPEAL

Use
The Florida Supreme Court tells us about "use":
In analyzing liability coverage for an act arising out of the ownership, maintenance, and use of a motor vehicle, 6B J. Appleman, Insurance Law and Practice, section 4317 (Buckley ed. 1979), states:
It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. The word "coverage" as used in automobile liability policy means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation.
. . . .
Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
Race v. Nationwide Mut. Fire Ins. Co., 542 So.2d 347, 349 (Fla.1989) (emphasis added). This court also tells us about "use":
In analyzing whether or not the facts of this case fall within the "use" coverage of the policy, a three-pronged test has been suggested:
1. The accident must have arisen out of the inherent nature of the automobile, as such;
2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, ... must not have terminated;
3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
The first prong requires that the "use" arise out of the "inherent nature" of the car. That an automobile is used to transport and even store items, either personal or commercial in nature, seems to us inherent....
The second prong of the test requires that the accident occur within the territory of the auto and that the "use" not have terminated....
The third prong presents a more difficult problem. In [the second district], Judge Grimes noted that this prong defines "arising out of [the use]" to mean "originating from," "growing out of," or "flowing from." A showing of proximate cause between the use of the car and the auto accident is not required. What is required is that a "causal connection or relation" between the two is shown....
Since we are here concerned with a provision of the policy relating to coverage, rather than exclusions from coverage, the terms used must be liberally construed in favor of the injured party. In view of the broad and comprehensive sense in which the term "auto accident" may be construed, we consider that only a minimal causal connection between the use of the automobile and the injury is required for coverage to apply.

National Merchandise Co. v. United Serv. Auto. Ass'n, 400 So.2d 526, 532 (Fla. 1st DCA 1981) (citations and footnotes omitted) (emphasis added).
The trial court determined that no causal connection exists between Edwards' accident and the use of McKenzie's vehicle. This conclusion is sustainable as a matter of law only if one ignores the language informing us that "only a minimal causal connection between the use of the automobile and the injury is required for coverage to apply." *512 We moreover agree that "use" of a vehicle includes its loading and unloading. Pomerantz v. Nationwide Mut. Fire Ins. Co., 575 So.2d 1311 (Fla. 3d DCA 1991). "Trucks, by their inherent nature, are vehicles that must be loaded and unloaded in order to be used in their customary manner." Id. at 1313.
Edwards' accident thus arose out of the inherent nature of the truckit had to be loaded and unloaded. The accident arose within the natural territorial limits of the truck, and the truck's actual use was not terminatedEdwards was removing equipment from the back of the truck when he was injured; Edwards reentered the truck and drove off, unaware of his injury. And a minimal causal connection exists between the use of the truck and Edwards' injurythe unloading process set in motion a chain of events ending in injury. See also Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 657 So.2d 925, 927 (Fla. 1st DCA 1995) (holding that injuries received by a child during "horseplay" while a passenger in a van resulted from an accident arising out of the "ownership, maintenance or use of the van; "the question is one of foreseeability" "we think it quite foreseeable that the use of the van for such a purpose would set in motion a chain of events ending in an incident such as that which caused [the child's] injuries").
We furthermore have noted that "only where reasonable persons could not differ on the issue of foreseeability may the court decide as a matter of law that a certain act or conduct constitutes an independent, efficient intervening cause." Pamperin v. Interlake Cos., 634 So.2d 1137, 1139 (Fla. 1st DCA 1994) (citation omitted) (emphasis added). The trial court therefore erred when it determined as a matter of law that "no causal connection exists" between Edwards' accident and the use of the McKenzie vehicle.

Regarding operations
The trial court also found, as an independent ground for determining that Edwards' accident is not covered under the auto policy, that the language in the certificate of insurance "only provides coverage for any negligent acts or omissions of McKenzie which directly cause a loss to Container." The certificate of insurance provides: "[Container] and affiliates are named as add'l insured regarding operations performed by insured."
Both parties rely for authority on Consolidation Coal Co. v. Liberty Mutual Insurance Co., 406 F.Supp. 1292 (W.D.Pa.1976), discussed in Florida Power & Light Co. v. Penn America Insurance Co., 654 So.2d 276 (Fla. 4th DCA 1995). Florida Power holds that, where an insurance policy defines "persons or entities insured" as "any ... organization... to which the named insured is obligated by virtue of a written contract ... to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured," an organization is entitled to coverage as an additional insured despite that the named insured committed no negligence. Florida Power, 654 So.2d at 278. The Florida Power court reasoned that courts must construe ambiguous terms "against the insurer and in favor of coverage," and if the insurer intended to limit coverage to only instances of accidents caused by the named insured, then the insurer could use the limiting language employed in Consolidation Coal, that is, the language: "but only with respect to acts or omissions of the named insured." Florida Power, 654 So.2d at 278.
We conclude, consonant with the reasoning in Florida Power, that the trial court erred as a matter of law when it construed the language in the certificate of insurance "regarding operations performed by [McKenzie]"in favor of the insurer and against coverage. If Continental intended to limit coverage to negligence of the named insured, then it could have expressly so provided. See also Hertz Corp. v. Pugh, 354 So.2d 966 (Fla. 1st DCA 1978) (rejecting the argument that the parties did not intend for insurance to cover an accident where the named insured committed no negligence, noting that the policy contained no specific exclusion to that effect).

ISSUE ON CROSS-APPEAL

Immunity
The trial court determined that the workers' compensation act provides McKenzie *513 no immunity from Container's suit. Section 440.11(1), Florida Statutes (1991), in relevant part provides: "The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor...." The trial judge held that section 440.11(1) is "unconstitutional when applied to bar a third party tortfeasor from bringing an action for indemnification against an employer," citing L.M. Duncan & Sons v. City of Clearwater, 478 So.2d 816 (Fla.1985) (holding that dismissal of a third-party complaint for indemnification was premature where a question remained whether the one seeking indemnification was actively negligent, thus precluding indemnification against one who paid workers' compensation benefits to the injured party); and Sunspan Engineering & Construction Co. v. Spring-Lock Scaffolding Co., 310 So.2d 4 (Fla.1975) (holding that section 440.11(1) is unconstitutional as applied to bar a third-party tortfeasor's common law action for indemnification against a negligent employer who paid his injured employee workers' compensation benefits).
McKenzie argues that the cases the trial judge relied upon are impliedly overruled by later cases, specifically Eller v. Shova, 630 So.2d 537 (Fla.1993), and Hyster Co. v. David, 612 So.2d 678 (Fla. 1st DCA 1993). We need not reach this question however because these cases are inapposite: neither involves contractual liability. McKenzie fails to acknowledge that Container is suing it for breach of contract, not for indemnification. Nothing in section 440.11(1) expressly provides or implies any immunity against an action for breach of contract. See Sunspan, 310 So.2d at 8 ("[o]ur holding does not directly touch upon whether [section] 440.11(1) precludes a third party tort-feasor from bringing an action for indemnification upon a contractual theory of liability"). We thus approve the result reached below, although not the reasoning. We furthermore certify the following question to the Florida Supreme Court as one of great public importance:
WHEN PARTIES ENTERING INTO A WRITTEN CONTRACT BARGAIN FOR INSURANCE COVERAGE, IS THE WORKERS' COMPENSATION SHIELD APPLICABLE IN A SUIT FOR BREACH OF THE PARTIES' CONTRACT REGARDING THE BARGAINED-FOR INSURANCE?
We therefore reverse and remand for consistent proceedings regarding the issues raised on appeal, affirm regarding the issue raised on cross-appeal, and certify a question.
ERVIN and VAN NORTWICK, JJ., concur.
NOTES
[1] Edwards, after removing his safety equipment, exited his delivery truck to retrieve equipment he inadvertently left on the back of it. He slipped on some curbing as he exited his truck, and splashed himself with caustic liquid on the ground beside the truck.