OHIO CASUALTY INSURANCE
COMPANY, Plaintiff,

v.

CONTINENTAL CASUALTY COM-
PANY and Federal Insurance
Company, Defendants.

No. 02–81114–CIV.

United States District Court,
S.D. Florida.

Aug. 22, 2003.

Robert David Moses, Gordon Robert Leech, Wiederhold, Moses & Rubin, West Palm Beach, FL, for Plaintiff.

Eugene Hartman Brandt, Eric Arnold Peterson, Howard William Holden, Peterson Bernard Vandenberg Zei, Geisler & Martin, West Palm Beach, FL, Jean Anne Kneale, John Robert Anderson, Hicks & Kneale, Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Defendant Federal Insurance Company's ("Federal") Motion to Dismiss the Amended Complaint, filed May 5, 2003 [**DE 50**] and Defendant Continental Casualty Company's ("CNA") and Motion to Dismiss the Amended Complaint, filed May 22, 2003 [**DE 53**]. Plaintiff Ohio Casualty Insurance Company ("Ohio") responded to Federal's Motion on May 29, 2003 [**DE 54**], and Federal replied on June 16, 2003 [**DE 63**]. Ohio responded to CNA's Motion on June 19, 2003 [**DE 65**]. CNA filed no reply. These motions are ripe for adjudication.

## I. BACKGROUND

This action is a dispute among insurance companies arising from a January 3, 2001 car accident in Boynton Beach, Florida on a roadway owned and maintained by the Hunter's Run Property Owner's Association, Inc. ("Hunter's Run"). On the date in question, Priyesh Parbhoo was operating a Hunter's Run-owned vehicle on the roadway and was involved in a single car accident. (Am.Compl.¶ 6, Ex. A.¶¶ 7–8.) Parbhoo's passenger, Marcela Jaramillo, died in the accident. (Am.Compl.¶ 6, Ex. A.¶ 7, 10.)

Jaramillo's personal representative filed suit in state court alleging that Hunter's Run owned the vehicle involved in the accident, was negligent in allowing the roadway to remain in a dangerous and defective condition, and that Parbhoo operated the vehicle in a negligent manner. (Ex. A.¶ 6, 9.) Ohio and Everest National Insurance Company ("Everest"), two of Hunter's Run's insurers, reached a $2.8 million dollar settlement, of which Everest paid $1 million and Ohio paid $1.8 million. CNA and Federal also insured Hunter's Run. CNA's commercial umbrella insurance policy provided liability coverage, whereas Federal's commercial umbrella policy provided additional primary and excess coverage over CNA's policy. CNA and Federal neither participated in settlement negotiations nor contributed to payment of the settlement.

Ohio, believing that CNA and Federal should have participated in settlement negotiations and paid a portion of the settlement, filed the instant action. Ohio alleges that equity, as well as the terms of the CNA and Federal policies, require indemnification, contribution and subrogation of Hunter's Run and Ohio Casualty.[1] CNA and Federal have moved to dismiss, arguing that they were not obligated to pay a portion of the settlement because their policies expressly exclude coverage for injuries resulting from automobiles.

---

1. In Count I, Ohio asserts equitable subrogation and indemnification against CNA, and in Count II, Ohio asserts equitable contribution and indemnification against federal. The text of the Complaint, however, indicates that Ohio is bringing claims for subrogation, indemnification and contribution against both CNA and Federal.

## II. *LEGAL STANDARD ON MOTIONS TO DISMISS*

Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." When examining a motion to dismiss, this Court considers whether the plaintiff has alleged facts sufficient to state a claim for relief. A motion to dismiss should not be granted unless the plaintiff can prove no set of facts in support of its claim entitling it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When reviewing a motion to dismiss, "the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Watson v. Bally Mfg. Corp.*, 844 F.Supp. 1533, 1535 n. 1 (S.D.Fla.1993), *aff'd*, 84 F.3d 438 (11th Cir.1996) (quoting 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 37 (1990)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank*, 225 F.3d 1228, 1231 (11th Cir.2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

## III. *DISCUSSION*

CNA and Federal claim that they have no liability for the accident because their policies exclude coverage for injuries resulting from automobiles. CNA's policy excludes coverage for injuries "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, (auto) or water craft owned or operated or rented or loaned to any insured." Federal's policy consists of two sets of coverage: Coverage A and Coverage B. Coverage A provides coverage for "that part of loss covered by this insurance in excess of the total applicable limits of the underlying insurance." Federal's Coverage A also states that "if the underlying insurance does not cover loss...then we will not cover such loss." Federal's Coverage B explicitly excludes coverage for "any liability arising out of the ownership, maintenance, use, loading or unloading, or entrustment to others of autos...."

 Exclusionary clauses, generally considered contrary to the protective purpose of insurance, are construed narrowly against the insurer. *Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So.2d 739, 741 (Fla. 5th DCA 2003). In the absence of ambiguity in the policy language, however, rules of construction are unnecessary and courts will apply the plain language of the policy. *National Indemnity Co. v. Corbo*, 248 So.2d 238, 241 (Fla. 3d DCA 1971). *See also Riveroll v. Winterthur Int'l Ltd.*, 787 So.2d 891, 892 (Fla. 3d DCA 2001) (unambiguous policy language is to be construed according to its plain meaning). The policy language is to be interpreted according to its "everyday meaning" as it is "understandable to a layperson." *Hrynkiw*, 844 So.2d at 741. With respect to auto exclusions, "[t]he use to which the vehicle was being put at the time of the injury governs the applicability of the exclusion." *Cesarini v. American Druggist Ins. Co.*, 463 So.2d 451, 452 (Fla. 2d DCA 1985).

Ohio argues that the language "arising out of" is ambiguous. Ohio claims that the alleged negligently maintained roadway was sufficient, in and of itself, to cause the accident. According to Ohio, it is a question of fact whether the accident stemmed solely from the road conditions or whether the accident stemmed from the road conditions *and* the driver's alleged negligence. If the accident resulted solely from the

road conditions such that a non-negligent driver would have experienced the same difficulties as Parhboo, the policies' automobile exclusions would not apply.

■ Ohio's argument is not persuasive. As an initial matter, the Court notes that the language "arising out of" is not ambiguous. Courts have defined the language "arising out of" as "broad, general, and comprehensive terms effecting broad coverage... 'Arising out of' are words of much broader significance then [sic] 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or in short, 'incident to or having connection with,' the use of the car." *National Indemnity*, 248 So.2d at 240 (quoting *Red Ball Motor Freight v. Employers Mut. Liability Ins. Co.*, 189 F.2d 374, 378 (1951)). *See also Hagen v. Aetna Casualty & Surety Co.*, 675 So.2d 963, 965–66 (Fla. 5th DCA 1996) (policy excluding coverage for injuries "arising out of the . . . operation, use . . . of any automobile . . . operated by . . . the insured" is not ambiguous in that it "clearly excludes injuries arising out of the use of a vehicle.") The plain language of the policies in the instant case is unambiguous. The conditions of the roadway aside, the accident was "connected" to the use of a vehicle in that it would not have occurred but for the use of the vehicle. Since the accident "arose from" the use of an automobile, the exclusions therefore apply to absolve CNA and Federal of any liability for contributing to the settlement payment.

■ Ohio attempts to circumvent the automobile exclusion clauses by invoking the concurrent cause doctrine. This doctrine allows recovery if the loss stems from multiple causes provided that one of the causes is an insured risk. *American Surety*, 788 So.2d at 1099. Ohio claims that Hunter's Run's alleged negligent maintenance of the roadway was itself sufficient

to cause the accident. Since the policies contain no exclusions for negligently maintained roadways, the automobile exclusions are inapplicable. This argument is also unavailing because the concurrent cause doctrine only applies when the multiple causes of an injury are independent, involving separate and distinct risks. *Id.* Such is not the case here. Since the loss would not have occurred but for the use of the motor vehicle, Ohio is precluded from resorting to the concurrent cause doctrine.

Florida courts examining this issue have reached similar conclusions. In *Atkins v. Bellefonte Ins. Co.*, 342 So.2d 837 (Fla. 3d DCA 1977), plaintiff's car was struck by a car owned by a school and operated by a school employee. Plaintiff alleged that the employee was returning to the school with an escaped minor and that the minor's conduct contributed to the accident. *Id.* at 837. At issue was whether the insurance policy, which excluded coverage for injuries resulting from "the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, trailer, watercraft or aircraft," barred Plaintiff's claim. *Id.* at 837–38. Plaintiff alleged that the policy provided coverage for his injuries because the exclusionary clause was limited to injuries arising from the operation of automobiles, whereas his injuries also arose from the minor's escape and the school's improper handling of the return trip. *Id.* at 838. The Court disagreed, noting that "[n]ot only was the plaintiff's damage a primary consequence of the School's use of the motor vehicle, but also it could not have occurred without the use of the School's motor vehicle." *Id.* Even though the school may have been negligent in its handling of the minor, the accident would not have occurred but for use of the car, and the exclusionary clause applied to bar coverage.

The Court reached a similar conclusion in *Hrynkiw*. This case stemmed from a shooting that occurred in a private residence. The shooting victim brought an action against his shooter and the shooter's parents, alleging, in part, that the shooter's parents negligently kept a gun in an unlocked drawer. 844 So.2d at 741. The insurer defended on the grounds that the homeowners' policy excluded coverage for "any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." *Id.* at 742. The plaintiff argued that the policy provided coverage because it excluded coverage only for intentional acts only. The Court disagreed, ruling that the plaintiff could not rely on the concurrent cause doctrine because his injury resulted from both the alleged negligent maintenance of the firearm and the intentional act of shooting. *Id.* at 745.

In *Cesarini*, the Court held that no coverage existed for an injury stemming from an accident in which a school employee struck plaintiff while driving a school bus to a maintenance garage. 463 So.2d at 452. The policy at issue excluded coverage for "bodily injury . . . arising out of the . . . maintenance, operation, [or] use" of the bus. *Id.* Plaintiff argued that the exclusion was ambiguous because it did not address the school board's alleged negligence in hiring the driver. *Id.* The court disagreed, noting that exclusion "clearly applied to injury arising from the use or maintenance of the vehicle." *Id.* Since the bus was being put to use in a manner contemplated by the policy, the exclusion barred coverage. *Id.*

Florida's Fifth Circuit Court of Appeals reached the same conclusion in *Hagen v. Aetna Casualty*, 675 So.2d 963 (Fla. 5th DCA 1996). Hagen owned a retail carpet outlet but neither owned nor had access to a forklift. Richardson, an employee of a carpet delivery company, delivered carpet to Hagen's business. Since Hagen had no access to a forklift, Richardson tied one end of a rope to a roll of carpet and the other end to the bumper of Hagen's vehicle. When the vehicle pulled forward, the carpet would be pulled from the delivery truck. The rope apparatus successfully removed three rolls from the truck, but the fourth roll knocked Richardson down and fell on him. Richardson sued Hagen for failure to have suitable equipment for unloading carpet, but the Court held that the insurer had no duty to indemnify because its policy excluded coverage for bodily injuries arising out of the operation of a vehicle. The Court also held that Richardson could not recover based on the concurrent cause doctrine, noting that "the concept that the *failure to have a forklift,* the *decision* to do the act, the *plan* to do the act and the *result of doing the act* (unloading) are separate and distinct incidents of negligence from the act itself is metaphysics at best." *Id.* at 967.

Ohio relies on *Westmoreland v. Lumbermens Mutual Casualty Co.*, 704 So.2d 176 (Fla. 4th DCA 1997) in an attempt to invoke the concurrent cause doctrine. In *Westmoreland,* the engine of an unoccupied motor vehicle was left running in an unventilated garage. *Id.* at 177. The air conditioner, located inside the garage, dispersed carbon monoxide throughout the residence, killing all of its occupants. *Id.* Plaintiffs sued the owner's estate alleging, in the alternative, that the deaths were caused by the owner's failure to maintain the property in a safe condition and that the operation of the motor vehicle caused the deaths. *Id.* at 178. The homeowner's policy excluded coverage for injuries "arising out of the ownership, maintenance, use, loading or unloading of motor vehicles." *Id.* The complaints alleged that the deaths resulted from failure to open the garage door while the vehicle was running, the

maintenance of an unsafe air conditioner, failure to install carbon monoxide detectors in the home, failure to ventilate the garage, failure to warn of the dangerous condition and risk of operating the vehicle in the closed garage, and/or failure to otherwise prevent carbon monoxide from entering the home. *Id.* at 187. The Court held that the insurer owed a duty to defend because "a jury could theoretically find that any one of these alleged acts of negligence was the legal cause of the deaths." *Id.*

The Court declines to follow the *Westmoreland* rule. As noted in the concurrence in *Westmoreland,* the language "arising out of" "is not vague because it is undefined, any more than the presence of a definition in a policy sucks all meaning out of a common work used in its normal context. Of the possible definitions of the phrase 'arise from,' coverage for this accident would be excluded under the most common usages." *Id.* at 188. The accident in the instant case "arose from" the use of an automobile because the loss would not have occurred but for the use of the automobile. Based on the decisions reached in *Atkins, Hrynkiw, Cesarini* and *Hagen,* the Court concludes that CNA and Federal cannot be required to contribute to the settlement payment.

## IV. *CONCLUSION*

The Court, being fully advised and having considered the pleadings and the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that Defendant Federal Insurance Company's Motion to Dismiss the Amended Complaint, filed May 5, 2003 **[DE 50]** and Defendant Continental Casualty Company's Motion to Dismiss the Amended Complaint, filed May 22, 2003 **[DE 53]** are GRANTED. The above-styled matter is hereby DISMISSED WITH PREJUDICE. The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.