**ALLSTATE INSURANCE COMPANY,**
Plaintiff,

v.

**Louis SAFER, an individual d/b/a Safer Distributors, Megan Kammerer, individually an as personal representative of the Estate of Ja Michael Kammerer, and as parent and natural guardian of Hailey Kammerer and James Michael Kammerer, Defendants.**

No. 3:02CV808J–32HTS.

United States District Court,
M.D. Florida,
Jacksonville Division.

April 16, 2004.

Ronald L. Kammer, Esq., Hinshaw & Culbertson, Miami, FL.

Donald W. St. Denis, Esq., Anderson, St. Denis & Glenn, Jacksonville, FL.

Brian William Davey, Esq., Anderson, St. Denis & Glenn, Jacksonville, FL.

Gerald W. Weedon, Esq., Marks, Gray, P.A., Jacksonville, FL.

Nicholas V. Pulignano Jr., Esq., Marks, Gray, P.A., Jacksonville, FL.

Terrance E. Schmidt, Bledsoe, Schmidt, Moonly, & Roberson, P.A., Jacksonville, FL.

## *ORDER*

CORRIGAN, District Judge.

This case is before the Court on the parties' cross-motions for summary judgment. On November 14, 2003, Plaintiff Allstate Insurance Company ("Allstate") filed a Motion for Summary Judgment on Complaint for Declaratory Relief. (Doc. 60). Defendant Megan Kammerer and defendant Louis Safer filed separate consolidated responses and motions for summary judgment on December 12, 2003. (Docs. 61 & 63). Allstate filed a separate response to each of defendants' motions for summary judgment. (Docs. 66 & 68). The Court heard oral argument on the cross-motions on March 23, 2004. (Doc. 70).

### I. Background

In December of 2000, Allstate issued a commercial general liability insurance policy to defendant Safer for the period between December 10, 2000, and December 10, 2001. Safer is a sole proprietor doing business as Safer Distributor. The commercial general liability policy [1] includes the following relevant provisions:

---

1. The commercial general liability policy is attached to Allstate's Motion for Summary Judgment on Complaint for Declaratory Relief (Doc. 60) as exhibit A. However, the pagination of the policy is not conducive to easy identification of the relevant provisions. The dispute over the language of the commercial general liability policy involves a thirteen

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We [Allstate] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

### 2. Exclusions . . .

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to: . . .

(3) Parking an "auto" on, or on the ways next to premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured. ["you" is also defined as the named insured].

(CGL Policy at 1, 3).

On June 4, 2001, a vehicle driven by Megan Kammerer was struck by a tractor trailer owned by Modlin's Trucking, Inc., and driven by Donald McGuirt. Tragically, this collision, which occurred at the intersection of Phillips Highway and Gordon Street in Jacksonville, Florida, resulted in the death of Ja Michael Kammerer. This intersection is adjacent to Safer Distributor, which is located at 5970 Phillips Highway. Megan Kammerer has brought a state court action against Safer claiming that a box truck on Safer's property was parked in such a manner that it obstructed motorists' view of the intersection and caused the collision of the Kammerer and Modlin's Trucking, Inc. vehicles.

## II. Procedural History

Allstate's Amended Complaint for Declaratory Relief, filed in this Court, requests that the Court declare that Allstate has no duty to defend or indemnify Safer in the state court action brought by Kammerer as a result of the June 4, 2001 accident. (Doc. 14). On June 30, 2003, Allstate filed a motion for summary judgment based on the state court negligence complaint brought by Kammerer against Safer. (Doc. 38). Due to the need to resolve certain discovery issues, the Court postponed the due date of defendants' responses. (Doc. 51). However, on October 17, 2003, Allstate filed a notice which indicated that Kammerer had filed a Second Amended Complaint in the state court action against Safer on September 10, 2003. (Doc. 55).[2] Allstate subsequently filed an agreed motion to supplement its motion for summary judgment so that it could address the new allegations made in Kammerer's Second Amended Complaint. (Doc. 57). The Court then held a status conference during which the parties agreed that this case involved solely issues of law and should be decided on cross-motions for summary judgment. (Doc. 58). The cross-motions for summary judgment are now ripe for the Court's consideration. All parties agree that Florida law applies.

---

page segment of exhibit A entitled **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**. This portion of the policy will be cited in this opinion as "CGL Policy at ___."

**2.** Kammerer's Second Amended Complaint in the state court action is cited as "Kammerer Compl. at ¶ __." throughout this Order.

## III. Discussion

### A. Duty to Defend

■ The issue of whether an insurer has a duty to defend an insured is resolved by looking at the allegations of the complaint filed by a third party against the insured. *Biltmore Const. Co. v. Owners Ins. Co.*, 842 So.2d 947, 949 (Fla. 2d DCA 2003), *Acceptance Ins. Co. v. Bates, Dunning & Associates, Inc.*, 858 So.2d 1068, 1069 (Fla. 3d DCA 2003) (citation omitted), *State Farm Fire & Cas. Co. v. Higgins*, 788 So.2d 992, 995 (Fla. 4th DCA 2001). "The insurer must defend if the complaint, when fairly read, alleges facts that create potential coverage under the policy." *Acceptance Ins. Co.*, 858 So.2d at 1069. However, "there is no obligation on an insurer to defend an action against its insured when the pleading in question shows the applicability of a policy exclusion." *Id.*[3]

### 1. Arising Out of the Ownership, Maintenance or Use of an Auto

■ The language "arising out of the ownership, maintenance or use . . . of an auto" is "broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' . . . or 'having a connection with' the use of the vehicle." *Hagen v. Aetna Cas. & Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996) (*en banc*), *rev. denied*, 683 So.2d 483 (Fla.1996) (citing *Nat'l Indem. Co. v. Corbo*, 248 So.2d 238 (Fla. 3d DCA 1971)); *Alligator Enterprises, Inc. v. Gen. Agent's Ins. Co.*, 773 So.2d 94, 95 (Fla. 5th DCA 2000), *rev. denied*, 790 So.2d 1101 (Fla.2001); *Ohio Cas. Ins. Co. v. Cont'l Cas. Co.*, 279 F.Supp.2d 1281, 1284 (S.D.Fla.2003); *Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 657 So.2d 925, 927 (Fla. 1st DCA 1995), *rev. denied*, 665 So.2d 220 (Fla.1995); *Carpenter v. Sapp*, 569 So.2d 1291, 1293 (Fla. 2d DCA 1990), *rev. denied, Allstate Ins. Co. v. Carpenter*, 581 So.2d 163 (Fla.1991); *St. Paul Fire & Marine Ins. Co. v. Thomas*, 273 So.2d 117, 120 (Fla. 4th DCA 1973); *Padron v. Long Island Ins. Co.*, 356 So.2d 1337, 1338 (Fla. 3d DCA 1978); *Watson v. Watson*, 326 So.2d 48, 49 (Fla. 2d DCA 1976); *Federal Ins. Co. v. Tri–State Ins. Co.*, 157 F.3d 800, 804 (10th Cir.1998) (Collecting cases from numerous jurisdictions and concluding that "the general consensus [is] that the phrase 'arising out of' should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'—that is, it requires some causal con-

---

**3.** Allstate's Amended Complaint for Declaratory Relief contains two counts. (Doc. 14). Count I alleges that there is no coverage under the commercial general liability policy. There are two allegations in Count I regarding why there is no coverage under the commercial general liability policy. The first is that Exclusion 2.G. to Coverage A of the commercial general liability policy precludes coverage because Kammerer's claims "arose out of the ownership, maintenance, use or entrustment to others" of the box truck. (*Id.* at ¶ 18). This allegation forms the primary dispute in this case. The second allegation is that there is no coverage under Coverage B of the commercial general liability policy, which provides coverage for "Personal and Advertising Injury Liability." (CGL Policy at 4–5).

Defendants failed to respond to the argument raised in Allstate's motion for summary judgment regarding Coverage B. (*See* Doc. 60 at 15). Moreover, Kammerer's allegations do not fit the definition of "personal and advertising injury" set forth in the commercial general liability policy. (CGL Policy at 12). Additionally, Count II alleges that there is no coverage under the automobile policy Allstate entered into with Safer. (Doc. 14 at ¶¶ 21–24). There is also no dispute over this count, as the automobile policy does not list the box truck among the vehicles that Allstate agreed to insure. (Auto Policy Declarations at 1). Summary judgment is therefore due to be granted on Count II of Allstate's Amended Complaint for Declaratory Relief.

nection to the injuries suffered, but does not require proximate cause in the legal sense."). Additionally, the phrase "arising out of the ownership, maintenance or use of an auto" is not ambiguous. *See Hagen,* 675 So.2d at 966; *Ohio Cas.,* 279 F.Supp.2d at 1284; *Am. Sur. & Cas. Co. v. Lake Jackson Pizza, Inc.,* 788 So.2d 1096, 1099–1100 (Fla. 1st DCA 2001), *rev. denied,* 814 So.2d 439 (Fla.2002); *Alligator Enterprises,* 773 So.2d at 94–95; *Cesarini v. Am. Druggist Ins. Co.,* 463 So.2d 451, 452 (Fla. 2d DCA 1985).[4]

█ *Alligator Enterprises* involved an automobile collision between a family vehicle and a tractor trailer owned by Alligator which allegedly "had been negligently parked on the roadway outside of Alligator's premises by an Alligator employee." 773 So.2d at 94–95. Alligator's commercial general liability insurer brought a declaratory judgment action due to its uncertainty as to whether it had a duty to defend Alligator in the lawsuit brought by the family. *Id.* at 95. The commercial general liability policy contained an exclusionary clause that stated that the insurance did not apply to " '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or water craft owned or operated by or rented or loaned to any

insured. Use includes operation and 'loading or unloading.' " *Id.* The *Alligator Enterprises* court held that "[w]ithout question the injury here, as alleged in the ... complaint, arose out of the ownership, maintenance or use of Alligator's tractor and trailer for which there is no coverage under the policy in question." *Id.* at 96. The court reasoned that "[w]here a policy provision is clear and unambiguous, it should be enforced according to its terms, whether it is a basic policy provision or an exclusionary provision." *Id.* at 95. The court also rejected Alligator's contention that "since the tractor and trailer was neither being operated nor in the process of loading or unloading, the exclusion does not apply ...." *Id.*

The exclusionary clause in the Safer commercial general liability policy is identical to the exclusionary clause at issue in *Alligator Enterprises.* Both cases also involve parked autos. (Kammerer Compl. at ¶¶ 13, 22).[5] Additionally, the language of exception (3) to the auto exclusion at issue in this case strongly suggests by negative implication that bodily injuries arising from autos that Safer owns and parked on his business premises are excluded from the commercial general liability policy. Exception (3) provides:

---

4. Kammerer claims that the exclusion is ambiguous because the policy fails to define the terms "arising out of," "ownership," "maintenance," and "use." (Doc. 61 at 3–4). However, identical policy exclusions have been held to be unambiguous. *See Alligator Enterprises,* 773 So.2d at 94–95; *Ohio Cas.,* 279 F.Supp.2d at 1284; *Lake Jackson Pizza,* 788 So.2d at 1099–1100. The Court does recognize that one Florida District Court of Appeal has held that the term "arising out of" was ambiguous as used in a policy exclusion similar to one at issue in this case. *See Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So.2d 176 (Fla. 4th DCA 1997). However, courts outside of the Fourth District Court of Appeal have refused to follow that court's decision in *Westmoreland. See Ohio Cas.,* 279 F.Supp.2d

at 1286 (Refusing to follow the *Westmoreland* rule and agreeing with the concurrence in *Westmoreland* which noted that the language "arising out of" is not vague); *Lake Jackson Pizza,* 788 So.2d at 1099–1100 (same). Additionally, at least one panel in the Fourth District Court of Appeal appears to have retreated from *Westmoreland*'s holding that "arising out of" is ambiguous. *See Estate of Bombolis v. Cont'l Cas. Co.,* 740 So.2d 1229, 1230 (Fla. 4th DCA 1999). The Court agrees with the majority Florida view that the exclusion is not ambiguous.

5. Kammerer's Second Amended Complaint also alleges that the vehicle was being used to advertise Safer Distributor. (*Id.* at 22b).

This exclusion does not apply to: ...

(3) Parking an "auto" on, or on the ways next to premises you own or rent, *provided that the "auto" is not owned by or rented or loaned to you or the insured.*

(CGL Policy at 3) (emphasis added). This language indicates that parking an auto owned by the insured on the insured's premises is covered by the exclusion. Thus, the language of the commercial general liability contemplates that there is no coverage in this case, since the injury arose out of Safer's parking of a box truck which he owned on his premises in such a manner that it allegedly caused bodily injury.

Both Kammerer and Safer, however, argue that this case is distinguishable from *Alligator Enterprises.* Both claim that while the vehicle in *Alligator Enterprises* was actually involved in the collision, Safer's vehicle was merely incidental to Kammerer's damages because its location obstructed the view of the two involved vehicles. (Doc. 61 at 15; Doc. 63 at 9). However, Count I of Kammerer's Second Amended Complaint against Safer alleges that "Safer ... was negligent by creating a parking space for a box truck *and* by permitting a box truck to be parked adjacent to his premises in such a way that it obstructed the view of motorists traveling on Gordon Street and southbound on Phillips Highway." (Kammerer Compl. at ¶ 13) (emphasis added). Count I continues on to allege that Safer's negligence caused the Kammerer vehicle to collide with the tractor trailer and was a "direct and proximate cause" of the death of Ja Michael Kammerer, losses suffered by the estate of Ja Michael Kammerer, and future losses by the Kammerer family. (*Id.* at ¶¶ 14–19). Count II alleges that Safer's negligence in parking "the vehicle on his premises in such a manner that it blocked and/or obscured the vision of motorists" and/or in "advertising Safer Distributing in such a manner that the Safer vehicle blocked and/or obscured the vision of motorists," caused the same accident and injuries as alleged in Count I. (*Id.* at ¶¶ 22–28). Thus, the Safer vehicle was more than merely incidental to Kammerer's damages claim. Instead, based on the allegations of the state court complaint, the Safer vehicle was the proximate cause of not only the accident, but also of Kammerer's injuries and damages.

Kammerer also contends that since the insured's vehicle in *Alligator Enterprises* was parked on the roadway, "it can be inferred that the vehicle was still in use." (Doc. 61 at 15). This is distinguishable from the present case, according to Kammerer, because here Safer's box truck "was located on Safer's property and not in use." (*Id.*). The Court sees no indication from the *Alligator Enterprises* opinion that would lead one to believe that the vehicle's location on the roadway was of any additional significance. Instead, the *Alligator Enterprises* court rejected Alligator's argument that the exclusion was inapplicable because "the tractor and trailer were neither being operated nor in the process of loading or unloading ...." 773 So.2d at 95.

Kammerer and Safer also claim that *Alligator Enterprises* is distinguishable from the present case because the box truck itself was not physically involved in the accident. This distinction, however, does not seem to matter based on the definition of "arising out of" set forth in *Hagen* and *Alligator Enterprises.* As noted *supra,* those cases define "arising out of" as " 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' ... or 'having a connection with' the use of the vehicle." *Hagen,* 675 So.2d at 965; *Alligator Enterprises,* 773 So.2d at 95. For example, if the family's car in *Alligator Enterprises* swerved in an attempt to miss the negligently parked tractor trailer and

collided with another vehicle instead of the tractor trailer, the accident still originated from the tractor trailer even though there was no contact with it. *See* Lee R. Rush & Thomas F. Segalia, *Couch on Insurance* § 119:31 (3d. ed. 1998) ("The coverage of a policy for liability and damages 'arising out of the use of' a vehicle is effective although there is no actual physical contact of the vehicle with the persons or property harmed."). Similarly, in this case, that the box truck was not physically involved in the accident does not necessarily lead to the conclusion that the accident did not arise out of the use of the box truck.

Kammerer and Safer, relying on *O'Dwyer v. Manchester Ins. Co.*, 303 So.2d 347 (Fla.3d Dist. 1974), argue that the vehicle was not the "but for" cause of the accident and that it was merely fortuitous that it was a vehicle that created the obstruction. Safer also claims that "the use of an object in such a way that it obstructs the view of drivers is not peculiar to the use [of] automobiles" and that "[t]he allegations would have been the same if any object, such as overgrown bushes had been placed in that spot." (Doc. 63 at 7).

In *O'Dwyer*, a young girl was trick-or-treating when she entered onto the Sparkmans' premises. While she was on the premises, she injured her eye "when she struck a protruding bolt which was on a bracket attached to a van on the premises." *O'Dwyer*, 303 So.2d at 348. The issue was whether the injuries to the girl were covered under an automobile policy that extended coverage to the insured "for bodily injuries which 'arise out of ... the use' of a vehicle." *Id.* The court held that there was no coverage under the automobile policy. *Id.* The court reasoned that "[t]he fact that the object on the property which caused [the girl's] accident was attached to the rear of a van truck used as a camper is, in our view a fortuitous circumstance. It cannot be said that 'but for' the

use of the vehicle ... the accident would not have happened." *Id.* at 349.

The present case is distinguishable from *O'Dwyer* because the vehicle here is the alleged cause of the accident and injuries. In *O'Dwyer*, the injury occurred because of the bolt, which merely happened to be attached to the car. Here, the injury was allegedly caused by the obstruction of the intersection that was created by the box truck itself. *O'Dwyer*, therefore, does not support Kammerer's and Safer's position.

Nor is it helpful to Kammerer and Safer that overgrown bushes, or some other object, could have caused the same obstruction. In *Hagen*, E & J Carpet Country was a small retail carpet store that had a practice of using a vehicle with a rope attached to it to remove carpet rolls from delivery trucks in lieu of using a forklift. 675 So.2d at 964. An employee of a delivery company was injured when he was knocked down as a roll of carpet was being pulled by the vehicle. *Id.* The delivery company employee subsequently sued E & J. Aetna, E & J's commercial general liability insurance provider, refused to defend or indemnify E & J., relying on an exclusion which provided that "[t]his insurance does not apply ... to bodily injury ... arising out of the ... operation, use ... of any automobile... operated by ... the insured." *Id.* at 965. The *Hagen* court was faced with the argument that "several strong men could pull the carpet out of the truck, [and thus] the use of the vehicle was merely incidental to the injury." *Id.* at 966. The *Hagen* court began from the premise that "if the use of the vehicle was merely incidental to the injury, then coverage would obtain." *Id.* However, the court found that "since the vehicle was actually in the unloading process in such a way as to cause injury, coverage did not apply." *Id.* (emphasis removed). Here, the box truck obstructed the intersection. The

fact that bushes or a billboard could have had the same effect does not change the fact that it is the box truck that is alleged to have caused the accident and injuries.[6]

### 2. The Concurrent Cause Doctrine

Both Kammerer and Safer argue that if "some of Kammerer's allegations in the Second Amended Complaint fall outside the scope of the [commercial general liability policy], the concurrent cause doctrine would entitle Safer to complete coverage." (Doc. 61 at 8–14; Doc. 64 at 11–12). The concurrent cause doctrine "allows for recovery if the loss stems from multiple causes provided that one of the causes is an insured risk." *Ohio Cas. Ins.*, 279 F.Supp.2d at 1284. The doctrine only applies, however, "when the multiple causes of injury are independent, involving separate and distinct risks." *Id.; Transamerica Ins. Co. v. Snell*, 627 So.2d 1275, 1276 (Fla. 1st DCA 1993), *rev. denied*, 639 So.2d 981 (Fla.1994) (the concurrent cause doctrine is "applicable only when the multiple causes are not related and dependent, and involve a separate and distinct risk."); *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F.Supp.2d 1312, 1319 (M.D.Fla.2002) ("The concurrent cause doctrine applies when multiple causes are independent.").

Here, the defendants claim that the concurrent cause doctrine is applicable since "there are independent acts of negligence which caused the accident to occur."

(Doc. 61 at 8). The first negligent act, according to Kammerer, was Safer's "failing to maintain the premises in a safe condition by allowing a parking space to be created which obstructed the view of motorists." (*Id.*) The second negligent act "was allowing the vehicle to be parked in such a fashion in order to obscure motorists right-of-way." (*Id.*). Contrary to the defendants' contention, however, these two alleged negligent acts are actually dependent. Count I of Kammerer's state court complaint alleges that Safer was "negligent by creating a parking space for a box truck *and* by permitting a box truck to be parked adjacent to his premises in such a way that it obstructed the view of motorists...." (Kammerer Complaint at 3) (emphasis added). The use of "and" in the allegations of the complaint indicates that these allegedly independent acts of negligence are actually dependent. Additionally, "creating a parking space" could not have caused this accident by itself; simply creating a space without actually parking the box truck there would not have caused any obstruction.[7] Thus, the concurrent cause doctrine does not apply in this case.

Kammerer and Safer also cite *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176 (Fla. 4th DCA 1997). In *Westmoreland*, "when the engine of an unoccupied motor vehicle was left running in a closed unventilated garage, the air

---

**6.** Kammerer also relies on *Hutchins v. Mills*, 363 So.2d 818 (Fla. 1st DCA 1978), and *Thomas*, 273 So.2d at 117. In *Hutchins*, the insured, while standing in the bed of his pickup truck in order to improve his ability to locate game, shot another hunter by accident. 363 So.2d at 820. The court held that "there was no causal connection between the use of the truck as a deer stand and the resulting death of the deceased." *Id.* at 821. In *Thomas*, the complaint alleged that the insured's negligent throwing of a pop bottle from a vehicle was the cause of an accident and resulting injuries. 273 So.2d at 118. The *Thomas* court held that the accident and inju-

ry did not arise out of the use of the vehicle, but instead "arose out of negligently throwing the bottle in the roadway." *Id.* at 121. Here, unlike *Hutchins* and *Thomas*, the box truck itself is alleged to have caused the accident and injuries by obstructing the intersection.

**7.** Kammerer appears to agree with this statement. In her response, Kammerer argues "Further, it was not the creation of the parking space which caused our incident, but allowing the vehicle to be placed in such a manner that it obstructed the view of passing motorists." (Doc. 61 at 17).

conditioning equipment—which was located in the garage—dispersed carbon monoxide poison gasses throughout the house." 704 So.2d at 177. All of the occupants of the house, including its owner, were killed by the fumes. *Id.* The estates of several of the victims brought a two count complaint against the estate of the owner. *Id.* One count alleged that the operation of the car caused the deaths. *Id.* The other count alternatively stated the deaths were "proximately caused by the failure of the owner to maintain the premises in a safe condition, and to warn of or correct any dangerous conditions as to which she reasonably had knowledge." *Id.* The owner's homeowner's policy contained an exclusionary clause virtually identical to the one at issue in this case. The *Westmoreland* court held that

> we read the allegations of the complaints in the premises liability causes of action to assert that the deaths were legally or proximately caused not by the running engine of the motor vehicle but instead by reason of the negligent placement of the air conditioning equipment in the garage, or by the failure to open the garage door or to ventilate the garage, or by the failure to locate carbon monoxide detection devices throughout the house.

*Id.* at 187. The court then concluded that because the jury could find one of these acts to be the proximate cause of the deaths, the homeowner's insurer had a duty to defend both claims.

The Court disagrees with the concurrent cause holding of *Westmoreland* and finds it inconsistent with the majority of Florida case law. The supposedly separate acts of negligence in *Westmoreland* were, like the allegedly separate acts of negligence in this case, in fact dependent. *Accord Ohio Cas. Ins. Co.*, 279 F.Supp.2d at 1285–86 (rejecting the *Westmoreland* court's conclusion regarding the concurrent cause doctrine). The deaths in *Westmoreland*

would not have occurred no matter the condition of the premises except for the fact that the running automobile was emitting carbon monoxide. Thus, the possible causes were not independent from the use of the automobile because they, by themselves, could not have caused the deaths. Similarly, in this case, the two allegedly separate acts are not independent causes because the negligent creation of a parking space, by itself, could not have obstructed the intersection. The box truck actually had to be parked in the space in order for the obstruction to occur.

### 3. No Gap in Coverage

 Safer also argues that there is a public policy consideration for finding coverage, namely that to hold otherwise would create a gap in coverage. (Doc. 63 at 18). "[A] comprehensive general liability policy should be construed as leaving no gap in coverage between it and an automobile policy." *Farrer v. United States Fid. & Guar. Co.*, 809 So.2d 85, 94 (Fla. 4th DCA 2002), *rev. denied*, 846 So.2d 1150 (Fla.2003). "Generally, courts have been reluctant to find duplicate coverage under the two types of policies." *Id.* (citing *Muzzio v. Auto–Owners Ins. Co.*, 799 So.2d 272, 274 (Fla. 2d DCA 2001)). This is why "arising out of the ownership, maintenance or use . . . of an auto" should be construed the same way whether it is used in a commercial general liability policy or an automobile policy. If coverage is to be complementary, then the phrase must mean the same thing in both contexts. *See Deni Associates of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1138 (Fla.1998) (An exclusionary provision is construed in favor of the insured only when it contains "a genuine inconsistency, uncertainty, or ambiguity in meaning."); *Hagen*, 675 So.2d at 965 (rejecting the argument that the phrase "arising out of" should be interpreted differently because

it appears in an exclusionary clause instead of in a coverage provision of an automobile liability policy); *Federal Ins. Co.*, 157 F.3d at 805 ("Because we do not believe that we can make a principled distinction in meaning simply based upon where in the contract the phrase 'arising out of' appears, we decline to assign it a more restrictive meaning simply because it appears in the context of an exclusionary clause.").

Here, the box truck was not one of the vehicles listed in Allstate's automobile policy with Safer. Instead, Safer obtained commercial automobile insurance on the box truck from Old Dominion Insurance Company. (Doc. 62). Old Dominion has undertaken a defense of Safer in the Kammerer state court case. (*Id.*). Both of these facts are undisputed. Thus, there is no concern over a gap in coverage in this case.

### 4. The *Race* Test

■■■ Kammerer and Safer also argue that the proper test to apply in this case is the so-called *Race* test. *See Race v. Nationwide Mut. Fire Ins. Co.*, 542 So.2d 347 (Fla.1989); *Farrer*, 809 So.2d at 94. In *Race,* the issue presented was "whether petitioners may recover under the uninsured motorist provision of their automobile insurance policy for injuries received from an uninsured motorist's intentional assault at the scene of a prior automobile accident." 542 So.2d at 347. The petitioner in *Race* was stopped at a red light when he was rear ended by another driver. Both drivers subsequently exited their cars at which point the petitioner was attacked by the other driver. Because the other driver was uninsured, the petitioner sought uninsured motorist benefits from his own insurance company under the provision of the policy providing coverage for injuries resulting from accidents "arising out of the ownership, maintenance or use

of the uninsured or underinsured vehicle." *Id.* at 348.

In determining whether the petitioner was entitled to recover under the uninsured motorist provision, the Florida Supreme Court began from the premise that "the term 'arising out of the ownership, maintenance, or use' of a motor vehicle as contained in a UM policy should be given the same interpretation as that language is construed in automobile liability policies." *Id.* In equating uninsured motorist policies to automobile policies, the court required a more stringent standard than the "some nexus" requirement that had been established in the personal injury protection context by *Government Employees Insurance Co. v. Novak,* 453 So.2d 1116 (Fla. 1984). The court quoted from Appleman, *Insurance Law and Practice,* § 4317 (Buckley ed.1979):

> It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. The word "coverage" as used in a automobile liability policy means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
>
> Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation. . . .
>
> *Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and*

*the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.*

*Id.* at 349 (emphasis added).

The *Race* court also cited with approval *Watson v. Watson,* 326 So.2d 48 (Fla. 2d DCA 1976), and quoted the following passage from that case:

> In order for liability coverage to exist, the incident must arise out of the ownership, maintenance or use of the car. The term "arising out of" has been interpreted to mean "originating from", "growing out of", or "flowing from." This does not require a showing of proximate cause between the accident and the use of the car, but there must be a causal connection or relation between the two for liability to exist.

*Id.* at 350. The Florida Supreme Court then concluded that the actions of the uninsured motorist would not be covered under his automobile policy, and therefore was not covered by the uninsured motorist provision of *Race's* policy because the injury did not "arise out of the use, maintenance, or operation of the uninsured automobile." *Id.* at 351.

The three part inquiry cited in *Race,* which some Florida courts have subsequently deemed as the *"Race* test," has not been uniformly applied in Florida case law. *Compare Carpenter,* 569 So.2d at 1293 (refusing to apply the three part inquiry cited in *Race* in the uninsured motorist context), *and Heritage Mut.,* 657 So.2d at 926 (instead of *"Race* test," applying the "flow from," "originate from," or "grow out of" definition of "arising out of" in a case involving an automobile liability policy), *with Progressive Express Ins. Co. v. Rus-*

*sell,* 763 So.2d 557, 558 (Fla. 4th DCA 2000) (applying the three part inquiry cited in *Race* in an uninsured motorist case), *and Pomerantz v. Nationwide Mut. Fire Ins. Co.,* 575 So.2d 1311, 1312–13 (Fla. 3d DCA 1991) (same).[8] This was forecast in Justice Barkett's concurring opinion in *Race,* in which she stated that she could not "discern from the majority opinion precisely what test will control this issue in the future." *Id.* (Barkett, J., concurring in the result).

Shortly after *Race* was decided, the Second District Court of Appeal determined that "construing *Race* to include this three-prong test in the law of Florida would be misplaced." *Carpenter,* 569 So.2d at 1293. The *Carpenter* court reasoned that

> [f]irst, such a construction would be a substantial departure from well-entrenched Florida case law as we understand it. Second, the Appleman quote appears to be out of context to the balance of the *Race* opinion, and nowhere does the court express an intent to adopt it as the law of our state.

*Id.* The *Carpenter* court found that in an uninsured or underinsured motorist case, for an injury to arise from the use of an auto, "the injury must originate or flow from the use of the vehicle." *Id.; but see Russell,* 763 So.2d at 558–59 (applying the three part inquiry quoted in *Race* in an uninsured motorist case).

In *Heritage Mutual,* the First District Court of Appeal interpreted an automobile liability policy using language it equated with the phrase "arising out of the ownership, maintenance or use of" a vehicle. The court noted that "Florida cases addressing the extent of coverage pursuant to such language reveal that there is no

---

**8.** As noted *supra,* the Florida Supreme Court denied review in both *Carpenter* and *Heritage*

*Mutual. See supra,* at 1349.

strict, bright-line, test." 657 So.2d at 926. The court also stated that it is clear that there must be some causal connection between the "ownership, maintenance or use" of the insured vehicle and the injury. *Id.* Then, citing *Race*, the court determined that "[i]t is not sufficient that the vehicle was merely the situs of the injuries." *Id.* The court then continued on:

> However, it is not necessary that the injuries have been proximately caused by "ownership, maintenance, or use of" the insured vehicle. Rather, coverage will be found to exist if the injuries "flow from," "originate from," or "grow out of" "ownership, maintenance or use of" the insured vehicle....

*Id.; but see Container Corp. of Am. v. McKenzie Tank Lines, Inc.*, 680 So.2d 509 (Fla. 1st DCA 1996) (applying the three part inquiry quoted in *Race* in an automobile liability case).

 The disagreement over whether the Appleman three part inquiry quoted in *Race* is the proper test has spilled over into the interpretation of automobile exclusions in commercial general liability policies. *Compare Hagen*, 675 So.2d at 965, *with Farrer*, 809 So.2d at 95 (applying the three part inquiry quoted in *Race* to an automobile exclusion in a commercial general liability policy). While resolving this conflict is admittedly a close call,[9] the Court will follow the standard set forth in *Hagen*. First, before *Race*, the majority rule within the Florida District Courts of Appeal was that "arising out of the ownership, maintenance, or use of an auto" means "flowing from" or "originating from" the use of the auto. *See Corbo*, 248 So.2d at 240 (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab.,*

*Ins. Co.*, 189 F.2d 374, 378 (5th Cir.1951)); *Padron*, 356 So.2d at 1338; *Thomas*, 273 So.2d at 120; *Watson*, 326 So.2d at 49; *but see Nat'l Merch. Co. v. United Serv. Auto. Ass'n*, 400 So.2d 526, 532 (Fla. 1st DCA 1981) (applying the three part inquiry from Applemen, which was later quoted in *Race*, to an automobile liability policy). As noted *supra*, *Race* cited *Watson* with approval and did not overrule the majority standard set forth in earlier case law. The *Race* court also did not explicitly apply the three part inquiry from Applemen to the facts of the case before it. *See Race*, 542 So.2d at 351. Moreover, a recent decision of the federal district court for the Southern District of Florida did not apply the three part inquiry quoted in *Race* to an exclusionary clause with identical language to the exclusionary clause at issue in this case. *See Ohio Cas. Ins. Co.*, 279 F.Supp.2d at 1284.

Finally, the three part inquiry cited in *Race* is also difficult to apply in a principled manner. The first prong requires that "[t]he accident must have arisen out of the inherent nature of the automobile." *Race*, 542 So.2d at 349. What constitutes the "inherent nature" of an automobile is difficult to discern, and Florida courts have done little to define the term. *See e.g. Farrer*, 809 So.2d at 95 (Concluding that a sexual assault that occurred within a vehicle did not arise out of the inherent nature of the vehicle without defining what constitutes the inherent nature of a vehicle). The second prong, the first part of which requires that "[t]he accident must have arisen within the natural territorial limits of an automobile," is equally enigmatic. *See Container Corp.*, 680 So.2d at 510 n. 1, 512 (finding that the accident

---

9. Sitting in diversity, this Court's obligation is to determine, as best it can, what the law of Florida is with respect to the contested issues. When, as in this case, there is a disagreement among the Florida District Courts of Appeal,

"the [federal] court must make an educated guess as to how the Florida Supreme Court would resolve the conflict." *Small Bus. Admin. v. Echevarria*, 864 F.Supp. 1254, 1262 (S.D.Fla.1994) (internal quotations removed).

arose within the territorial limits of the truck even though the facts indicated that the injury occurred when the driver "slipped on some curbing as he exited his truck, and splashed himself with caustic liquid on the ground beside the truck."). In sum, this Court does not believe that the Florida Supreme Court would determine that the three part inquiry quoted in *Race* is the applicable standard in this case, but rather would apply the *Hagen* standard.[10] As discussed above, under the test set forth in *Hagen*, Allstate does not have a duty to defend Safer in the state court action brought by Kammerer.

B. Duty to Indemnify

The duty to defend is broader than the duty to indemnify. *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So.2d 692, 695 (Fla. 4th DCA 1999). Thus, there is no duty to indemnify if there is no duty to defend. Allstate, therefore, does not have a duty to indemnify Safer for any damages he may have to pay as a result of the state court action brought by Kammerer.

Accordingly, it is hereby **ORDERED**:

1. Allstate Insurance Company's Motion for Summary Judgment on Complaint for Declaratory Relief (Doc. 60) is **GRANTED**.

2. Defendant Megan Kammerer's Motion for Summary Judgment (Doc. 61) is **DENIED**.

3. Defendant Louis Safer's Motion for Summary Judgment (Doc. 63) is **DENIED**.

4. The Clerk shall enter judgment in favor of Allstate Insurance Company, declaring that Allstate Insurance Company has no duty to defend or indemnify Louis Safer in the Florida state court action styled *Megan Kammerer v. Louis Safer*,

Case No. 03–01135 CA, Fourth Judicial Circuit, Duval County, Florida.

5. The Clerk shall close the case and term any remaining motions.

10. Given this decision, the Court need not determine whether the exclusion would apply if the *"Race* test" was employed.